HEARD NOVEMBER TERM, 1875.

## DeSaussure *vs.* Bollmann.

Where under a mortgage to secure the payment of the purchase money of land the land is sold under a decree of foreclosure to which a prior judgment creditor of the mortgagor was not made a party, for a sum less than the mortgage debt, the purchaser acquires such a marketable title as one with whom he afterwards contracts for a sale of the land is bound to accept.

To an action for a foreclosure of a mortgage of real estate, all encumbrancers, as judgment creditors for instance, existing as such at the commencement of the suit, must be made parties, otherwise they will not be bound by the decree.

A purchaser under a decree to foreclose a mortgage given for the purchase money of the land sold whose bid is not sufficient to extinguish the mortgage debt acquires the equity of redemption, and, it seems, a valid title even as against a prior judgment creditor who was not made a party to the action.

Where real estate is devised to a tenant for life, with remainder to his children and with power in the executors of his will to sell the property at the request of the tenant for life and reinvest the proceeds on the same limitations, and the tenant for life conveys his interest to a trustee for the benefit of his children, one afterwards contracting for the purchase of the property is not bound to accept a conveyance from the executors of the will, the tenant for life and the trustee.

DeSaussure *vs.* Bollmann. ·

BEFORE REED, J., AT CHARLESTON, SEPTEMBER, 1873.

This was an action by Wilmot G. DeSaussure, Julius Trouche, Florence T. Downey and Lawrence A. Duval, as executors of the last will and testament of Etienne Poincignon, deceased, Clarence A. Trouche and Gustavus Follin, against Behrend Bollmann for specific peformance of a contract for the sale of a lot of land.

The case was as follows:

On the 18th of March, 1875, the plaintiffs made a contract with the defendant for the sale to him of the lot in question at the price of $1,800, and on the same day they tendered to him a deed of conveyance of the lot executed by themselves. An abstract of the title, exhibited by the plaintiffs with their complaint, shewed that one Woolf J. Jacobi, on the 31st of August, 1860, conveyed the lot to John P. Laborde, and that on the same day Laborde mortgaged the lot to Jacobi to secure the payment of the purchase money; that Jacobi assigned the mortgage to one Philip A. McBride, who assigned it to M. H. McBride; that M. H. McBride assigned it to the "Savings Building and Loan Association," and that body, on the 3d of June 1863, assigned it to Etienne Poincignon; that Etienne Poincignon, on the 24th of September, 1866, filed a bill in equity against John P. Laborde for foreclosure of the mortgage. There was no other defendant in this bill.

That on the 11th of March, 1867, an order for sale of the mortgaged premises was made; that the sale was made by the Master, Etienne Poincignon being the purchaser, and on the 2d of May, 1867, the Master conveyed the lot to him. The sale was reported and the report confirmed by the Court.

On the 7th December, 1871, Etienne Poincignon made his will, by which he devised the said lot to his nephew Clarence A. Trouche for life, with remainder to his children. The devise is as follows:

"I give and devise * *, also my house and lot of land on the East side of State street, to my nephew Clarence Trouche for and during his natural life; and after his death I give and devise the said houses and lots of land equally between his children then living and the children then living of any child then dead; such children taking among them the parents' share by representation absolutely. * *

"It is my will, and I order and direct, that in case any of the tenants for life of any portion of the real property hereinbefore devised shall, during the continuance of such life estate, deem it for his or her interest that the real property in which he or she is respectively interested be sold, disposed of or exchanged, it shall and may be lawful for my executors, hereinafter named, or such as shall qualify upon this my will, and the survivors or survivor of them, or the trustee or trustees appointed in their lieu and stead, as often as occasion requires, upon being thereunto requested in writing by such life tenant, to sell, dispose of or exchange, and upon such sale, disposition or exchange to execute and deliver conveyances therefor, all or any part of such real property as they may be requested, and the proceeds arising from such sales to reinvest in other property, real or personal, and to hold such reinvested, exchanged or acquired property to and for the several life tenants respectively in the same manner as the original property."

The plaintiffs, Wilmot G. DeSaussure, Julius Trouche, Florence C. Downey and Lawrence A. Duval, were appointed executors of the will. It was admitted to probate on the 15th of July, 1873, and all the executors qualified.

On the 11th of August, 1873, Clarence A. Trouche conveyed to Gustavus Follin all his right, title, interest, life estate, claim and demand whatsoever of, in and to the said lot for the term of his natural life in trust to collect the rents, to pay taxes and insurance on the buildings, &c., and then to apply the net balance of the income to the maintenance, education and support of his daughter, Marie L. Trouche, and his son, Paul E. Trouche, in such manner and in such proportions as to the said Gustavus Follin, in his sole discretion, shall seem best for said children.

It was further shewn that on the 27th day of July, 1860, a judgment for $2,000 was entered up in Court of Common Pleas for Charleston District by Melvin P. Wilbur against John P. Laborde.

It seems to have been conceded that the proceeds of the foreclosure sale were insufficient to satisfy the mortgage debt.

The objections made to the title were: 1. The judgment in favor of Melvin P. Wilbur. 2. That under the conveyance by Clarence A. Trouche to Gustavus Follin, interests are given to the two children of Clarence A. Trouche, who are under age and are not, and cannot be, united in the conveyance to the defendant.

His Honor the presiding Judge, after hearing argument, made a decree for the specific performance of the contract, and ordering the costs to be paid by the defendant.

*Campbells & Whaley*, for appellant:

1. A judgment creditor is a *necessary* party to a bill for foreclosure of mortgage.

That he is a *proper* party will not be denied.

The error in not making him a party arises from the mistaken applicability of the English cases, in which the mortgagee is treated at law as the legal owner even before the condition broken, and in following those cases in the American Courts, where the English law has not been changed. In the consideration of the question before this Court, we can derive no light from the English authorities, and it must be solved by those cases in our own Courts which depend upon the Act of Assembly of 1791, which abolishes the doctrine that the mortgagee is the legal owner when the mortgagor is in possession.—General Statues, p. 536, § 1.

In a case lately considered by Chief Justice Waite, (*In Re Bennett*, bankrupt,) it was held that the mortgagee could not recover rents and profits until after bill filed against the mortgagor, with proper averment of the insufficiency of the mortgaged estate to pay the debt, following the case of *Matthews* vs. *Preston*, (6 Rich. Eq., p. 307,) in which, at page 308, the Court say: "In a Court of equity, independent of the provisions of our Act of Assembly of 1791, the mortgagor is regarded as the owner of the land even after forfeiture, and the mortgagee is only considered in the light of a creditor having a lien on the land. * * * *Here* they all stand upon the same footing as regards ownership in the land. None are considered as having rights founded upon legal title, but all are alike regarded as creditors *simply* having *liens* on the property and having precedence in payment according to their priorities."

There is no rule of pleading better known than that which requires all persons in interest to be made parties to the action.

That the judgment creditor of the mortgagor has such an interest in a foreclosure suit is evident from the case of *McClure* vs. *Mounce*, 2 McC., 423. In delivering the opinion of the Court, Mr. Justice Colcock says: "The abstract question is, when mortgaged land is sold without a regular foreclosure, either at law or in

equity, what interest passes to the purchaser? And the case above mentioned furnishes a direct answer. The equity of redemption is sold." Therefore here is the interest which the judgment creditor had and now has,—that is, the right to sell the equity of redemption,—and, having this, the right to redeem follows; and by buying at the Sheriff's sale he obtains the right to redeem from a purchaser at a foreclosure sale, where he is not a party.

That a judgment creditor is a necessary party.—See *Curtis* vs. *Hitchcock*, 10 Paige, 399, 400, 406, 407, 408; *Haines* vs. *Beach*, 3 John. Ch., 459; *Cook* vs. *Manicus*, 5 John. Ch., 89; *Ensworth* vs. *Lambert*, 4 John. Ch., 606.

2. The second objection to the title is:

That under the conveyance by Clarence Trouche to Gustavus Follin interests are given to persons under age, who are not, and cannot be, united in the conveyance to Behrend Bollmann.

The property in question passes under the will of Poincignon as follows: " I give and devise  *   *  . *  , also my house and lot of land on the East side of State street, to my nephew, Clarence Trouche, for and during his natural life."

Trouche, on 11th of August, 1874, conveyed his interest to Follin, "in trust, to hold for the life of Clarence Trouche, and to collect the rents, etc., and, after payment of taxes, etc., to apply the rents, etc., to the maintenance of Clarence A. Trouche's children during his lifetime."

After this, (that is, on 18th March, 1875,) the executors of Poincignon, with Clarence A. Trouche, the grantor, and Follin, the grantee and trustee as aforesaid, join in making title to Bollmann.

By the deed of Trouche to Follin, his interest and estate passed to the said Follin for the grantor's children. There is no power given to the trustee to change the estate, and it is a matter of doubt even if this Court would authorize the converting of real estate into personalty without requiring the trustee to put in security.

The power and duties of the trustee are defined in the deed as follows: " I do hereby nominate, constitute and appoint the said Gustavus Follin as my true and lawful attorney, for me and in my name, lieu and stead, to manage and conduct all the business appertaining to the said lots of land, to rent the same, collect the rents thereof, keep the same insured, and generally to do all and whatsoever I myself could personally do relative thereto ; and also for me, and in my name, lieu and stead, to ask, demand and receive of and

from the executors of the said Etienne Poincignon the interest and income arising from the said investment; and for me, and in my name, lieu and stead, to give, make and deliver all necessary, sufficient and proper acquittance, receipts and discharges therefor."

There is no power given to sell and convey, and none is to be implied from any words or powers contained in this deed.

The request that Trouche could make of the executors, if complied with, would annul his conveyance to Follin. In fact, Follin, the trustee, could require Trouche to make the writing requesting the executors to convey to Follin, if necessary to assure the estate conveyed to Follin.

Under the deed of Trouche, the interest of the infants cannot be divested by Trouche and Follin joining in with the executors to create a different estate.

3. The Court will not decree specific performance when there is any doubt about the title.—*Butler* vs. *O'Hear*, 1 DeS., 383. The marginal note is as follows: "The Court will not compel the specific performance of an agreement and oblige defendant to accept a title which the complainant cannot make out to be clearly good and free from encumbrances."—Sug. on Vend., 8 Am. ed., p. 577.

*DeSaussure & Son*, contra:

The facts in this case are sufficiently set out in the appellant's brief to be thus summarized:

In July, 1860, M. B. Wilbur entered up a judgment in the Court of Common Pleas against John P. Laborde, who, in August, 1860, subsequent to the obtaining of said judgment against him, purchased a lot of land on State street, in the city of Charleston, and mortgaged it for the purchase money, which mortgage, by sundry assignments, came finally to be owned by Etienne Poincignon, the testator of these respondents, who, in 1867, foreclosed the mortgage, and, to protect himself, bid in the property for less than the mortgage debt. Poincignon died in 1873, and, by his will, devised the said house and lot on State street to his nephew, Clarence A. Trouche, for life, with remainder to his children, with power to his (Poincignon's) executors to sell and reinvest the proceeds upon the written request of the life tenant. Clarence A. Trouche conveyed by way of assignment his life estate in the said property to Gustavus Follin, upon certain trusts set

forth in the appellant's brief, to wit: To receive the rents and profits, and apply them for the benefit of himself and children. Subsequent to such assignment, Trouche and Follin join in a written request to the executors that the house and lot be sold and the proceeds reinvested, and, thereupon, under the power contained in the will, the said executors sold the same at public auction to Behrend Bollmann, the appellant, and tendered to him a conveyance thereof; but he refused to accept the titles and comply with the terms of his purchase upon the same grounds he now appeals upon.

Upon these grounds, the case was argued before His Honor Judge Reed, who thereupon ordered and decreed that Bollmann accept the titles and comply with his purchase.

From such decree Bollmann appeals upon the grounds already stated as encumbrances upon the property:

1. A judgment entered up in the Court of Common Pleas for Charleston District on 27th July, 1860, by Melvin B. Wilbur *vs.* John P. Laborde.

The questions raised by this first objection are: Did this judgment constitute a lien upon subsequently acquired property, which was mortgaged for the *purchase money*, sold under decree of foreclosure, and bought in at the sale for *less than the mortgage debt?*

Was not the seizin and disseizin too instantaneous to create any estate in the vendee upon which the lien of this judgment against him could attach?

The rights of dower and homestead stand on much higher grounds relative to mortgages for the purchase money than a judgment lien, and are therefore more carefully guarded; but time and again has it been decided that a conveyance and a mortgage back by the vendee for the purchase money was too instantaneous a seizin for either of these rights to attach as against the mortgagee.

Also, of a seizin for an instant a woman shall not be endowed.— 1 Coke Litt., 576.

And Justice Parsons has said:

It certainly is law that where the husband is seized but for an instant, of this seizin his wife shall not be endowed. The seizin for an instant is where the husband by the same act, or by the same conveyance by which he acquires the seizin, parts with it.— *Holbrook* vs. *Finney*, 4 Mass., 586.

The husband must have been beneficially seized at his death to entitle to dower; and this principle applies where the husband

takes a conveyance in fee and at the same time mortgages the land back to the grantor, or to a third person, to secure the payment of the purchase money. Dower she cannot claim as against rights under that mortgage; such an instantaneous passage of the title in and out of him is not a sufficient seizin to entitle the wife to dower as against the mortgagee.—Cord's Leg. and Eq. Rights of Mar. Women, § 508; 4 Kent Comm., 39; 1 Hilliard on Mort., 681; Willard on Real Est., 62; 1 Washburn on Real Prop., 176; 2 Hilliard on Real Prop., 323; 1 Hilliard on Real Prop., 136; *Stow* vs. *Tift*, 15 John., 463; *Jackson* vs. *Dewitt*, 6 Cowen, 316; *Maybury* vs. *Brien*, 15 Peters, 38; *Bogie* vs. *Rutledge*, 1 Bay, 312; *Crafts* vs. *Crafts*, 2 McC., 54; *Frazier* vs. *Center*, 1 McC. Ch., 279; *Calhoun* vs. *Calhoun*, 2 S. C., p. 283; *Huguenin* vs. *Cochran*, 2 Amer. Rep., 303.

Where a mortgage is made simultaneously with the purchase of land, and as a part of the same transaction, no intervening right of homestead is created in the mortgage.—1 Hilliard on Mort., p. 2, note b, citing *New England* vs. *Merriam*, 2 Allen, 391; *Calhoun* vs. *Calhoun*, 2 S. C., 283.

For the purposes of this case these decisions as to dower and homestead only go to prove how fixed is the principle laid down in Freeman on Judgments, § 365, in these words:

"Nothing is better settled than this—that if the vendor, at the time of parting with his title, takes a mortgage or a judgment as a part of the same transaction to secure his purchase money, he retains a lien on the estate conveyed, not to be displaced by any other encumbrance."

A mortgage, trust deed, or other instrument given to secure the purchase money, takes precedence over a prior judgment lien against the vendee.—Freeman on Judgments, § 360.

No encumbrance against the vendee will attach upon an instantaneous seizin which is immediately conveyed back to the vendor by way of mortgage.—Willard on Real Est., 559.

In New York, by statute, "whenever lands are sold and conveyed and a mortgage is given by the purchaser at the same time to secure the payment of the purchase money or any part thereof, such mortgage shall be preferred to any previous judgment which may have been obtained against the purchaser."—Willard on Real Est., 124, 559; 1 Hilliard on Mort., 328, note, 331, note, 664, note; 4 Kent Comm., 435.

The lien of a judgment does not in equity attach upon the mere legal title to the land in the defendant when the equitable title is in another person.—*Ellis* vs. *Tously*, 1 P. Ch., 284.

Judgments are not specific liens; they are general liens; and, as such, they cannot prevail against prior equities.—*In re* Howe, 1 P. Ch., 128.

The prior equity in this case was that of the vendor to Laborde being paid for his property before it should pay the debts of Laborde.

For other decisions against the first ground of objection we offer the following cases: *Ahrens* vs. *White*, 39 Mary., 409; *Brown* vs. *Pierce*, 7 Wall., 217; *White* vs. *Carpenter*, 2 P. Ch., 266; *Kristed* vs. *Avery*, 4 P. Ch., 15; 9 Amer. Law Rev., 504; *Thaxter* vs. *Williams*, 14 Pick., 54.

In this latter case the decision went so far as to give precedence to the mortgage for the purchase money over a mechanic's lien for buildings actually erected upon the land.

All of these decisions relative to dower, homestead and judgments are based upon the clearest principle of justice, not of justice only, but of common honesty,—that the creditors of a debtor cannot take the property of another, for which the debtor has not paid, to pay his debts to them. Such a proceeding could and would not be tolerated; for the very terms upon which the debtor held the property was upon the condition that he should pay for it; and, in case he should fail to do so, the property should be primarily liable for the debt. The thing sold must remain as a security for the payment of its own price, for, were it otherwise, all transactions in real estate must necessarily be in cash, and, that being impossible, the change of property from hand to hand, which creates its principal value, would be most effectually stopped and its value destroyed.

To the second ground of appeal:

2d. That, under the conveyance by Clarence A. Trouche to Gustavus Follin, interests are given to persons under age who are not and cannot be, united in the conveyance to Behrend Bollmann. The answer is simple enough, for a reference to the appellant's brief shows the words of the will under which Trouche acquired his interest to be: "I give, etc., also my house and lot of land on the east side of State street, to my nephew Clarence Trouche *for and during his natural life;* and, after his death, I give and devise the said houses and lots of land equally between his children then

living and the children then living of any child then dead, such children taking among them the parent's share by representation absolutely."

Under this devise Trouche had nothing but a life estate in the property; the remainder in fee was to his children living at his death and the children of any child then dead. And the legal estate during the life estate of Trouche remained in the executors, because they were compelled by a provision in the will, upon the written request of Trouche, to do a certain act which no one else could: to sell the property constituting the life estate and reinvest the proceeds, "and to hold such reinvested  *    *    *  property  *    *    *  in the same manner as the original property."—*Tucker* vs. *Tucker*, 1 S., 408; *Brewster* vs. *Striker*, 2 Coms., 20.

What, then, could Trouche assign? Certainly nothing but his life estate; and that he did assign nothing else appears from the deed of assignment to Follin, giving him only the power, which Trouche had, to collect the rents and profits and apply them for the benefit of Trouche and his children by giving them a present support and by paying taxes, insurance and repairs, preserving the estate in remainder.

A tenant for life may alien his estate, but his grantee then becomes a tenant for the life of his grantor.—Willard on Real Est., 57.

Thus the assignment to Follin could in no wise affect the title to the premises sold to Bollmann, because the interest of the children under such assignment was in the life estate, and the evident intention of the testator was that the life tenant should have the privilege of choosing the kind of property that estate should be in. The conveyance to Bollmann could not destroy either the life estate or the estate in remainder, because the proceeds of sale then took the place of the house and lot and both estates remained as before. How, then, if the children under the assignment had only an interest in the life estate, and that is not in any way affected or destroyed by the conveyance to Bollmann, but remains as before, only changed in the form of investment, could any interest of the children in the life estate affect the titles to this property? It cannot.

The second objection is based, we think, upon a misapprehension of what the life estate which was assigned is in. It was not given in that specific house and lot or nothing else, but in that

house and lot or any investment of the proceeds of its sale, as the life tenant might choose.

That such was the intention of the will is shown by the clause giving the executors power to sell and reinvest when requested in writing by the life tenant. Such request was made both by Trouche and his assignee, and is endorsed upon the conveyance tendered.

June 1, 1876. The opinion of the Court was delivered by

Moses, C. J. It is not to be doubted that a mortgage of real estate executed for the security of the purchase money creates a lien against which no subsequent encumbrance affecting the mortgage could prevail. While it has been held in this State that the equity of redemption is such an estate in the mortgagor as may be subject to sale under a judgment against him, thereby vesting it in the purchaser, still the mortgage will take priority over judgments against the mortgagor, both antecedent and subsequent, and will be first entitled to satisfaction out of the sale of the property which it covers. Judgment creditors, as well as junior mortgagees of the same premises, even where the title vests in the mortgagee, and is not retained in the mortgagor, as under an Act of 1791, have an interest in the equity of redemption, which is necessarily affected by a sale under foreclosure.

Proceeding on the principle of "doing complete justice," which always governs a Court of equity, it has been held, both in England and New York, that "to a bill for foreclosure and sale of mortgaged premises all encumbrancers or persons having an interest existing at the commencement of the suit, subsequent as well as prior in date to the plaintiff's mortgage, must be made parties, otherwise they will not be bound by the decree."—*Haines* vs. *Beach*, 3 John. Ch., 459. Chancellor Kent, with the learning for which he was so distinguished, and the research with which he examined all questions presented for his decision, has there so fully reviewed the authorities, and set forth the reason and policy which confirm his conclusion, that the attempt to add anything to his convincing argument would be vain and superfluous. Conforming to the general rule, this Court said in *Manufacturing Company* vs. *Price*, (4 S. C., 338,) that "one who holds by title derived from the mortgagor subsequent to the mortgage is not concluded by a decree of foreclosure to which he was not a party."

It does not, however, follow in the case before us that, although the plaintiff in the judgment against Laborde was not made a party to the foreclosure by Poincignon, the assignee of the mortgage, the omission works such a defect in the title as will discharge the purchaser, Bollmann, from the specific performance of his contract. All that the vendor is required to tender is a good and marketable title; it is not enough for the defendant to show that the title may be possibly defeated.—*Thomson* vs. *Dulles*, 5 Rich. Eq., 370; *Lawrence* vs. *Lucas*, 6 Rich. Eq., 217. The purchase by Poincignon under his bill for foreclosure vested in him the equity of redemption reserved to the mortgagor and thus conferred upon him the absolute estate in the lands. The proceeds of the sale fell short of the amount due on the mortgage. The judgment against the mortgagor was obtained in 1860, and nearly fifteen years had elapsed before the sale to Bollmann, and no step in all that intervening time has been taken by Wilbur, the judgment creditor, for the sale of the equity of redemption remaining in Laborde. Neither to this moment has he intervened by any process to subject, if he could, the proceeds of the sale to the payment of his debt.

But suppose he were now to take proceeding under his judgment for the sale of the equity of redemption,—what right would a purchaser at such a sale acquire? By a Court of competent jurisdiction the mortgage has been foreclosed, and whatever interest Laborde had in the land has been conveyed to Poincignon on his purchase. In a contest of claim between him and such a purchaser, it must be decided in favor of the one who holds through the higher lien, and Poincignon's title is derived from a sale under a mortgage given to secure the purchase money of the land, the subject of dispute, and would necessarily prevail.

Mr. Story, in Section 742 of his work on Equity Jurisprudence, says: "The exercise of this whole branch of equity jurisprudence respecting the rescission and specific performance of contracts is not a matter of right in either party, but it is a matter of discretion in the Court,—not indeed of an arbitrary or capricious discretion, dependent upon the mere pleasure of the Judge, but of that sound and reasonable discretion which governs itself, as far as it may be, by general rules and principles, but, at the same time, which withholds or grants relief, according to the circumstances of each particular case, where these rules and principles will not furnish exact measure of justice between the parties." Applying the recognized

principles which govern the Court in the administration of this branch of its jurisdiction, we do not see in the objection urged by the first ground of appeal anything which would warrant its interposition against the relief sought by the complaint.

Not so, however, with the other question raised by the motion. Whatever right devolved on Clarence E. Trouche by the devise to him of a life estate in the property was assigned, released and conveyed by him for the benefit of his children, all minors, to Follin, in trust for their use. The language of the deed, after referring to the words of the will, embraces "all his right, title, interest, life estate, claim and demand whatsoever of, in, to and out of all and singular the devise and bequest hereinbefore recited, and the lot of land therein mentioned and the investments thereby provided." It was not possible for him to have employed a more comprehensive expression to denote his intention of transferring, for the benefit of his children, all the interest which he took under the will. The right reserved to him by the will to demand of the executors a sale or exchange of the property, that the proceeds of the sale may be reinvested, and such reinvested, acquired or exchanged property held for his benefit, depended upon his retention of the premises devised. The title was in him for life. He had the right to alienate his interest by gift or sale. Suppose for a money consideration he had bargained and conveyed the premises to a third person,— could he, in that event, have exercised his power under the will to demand and require a sale or exchange of them by the executors? By this decree he had transferred all his interest, and the purpose contemplated by the testator in making a sale or exchange at his request would therefore fail, for the effect intended could not be accomplished. Follin, the trustee under Trouche's deed, had no authority to sell and convey; his *cestuis que trust* were all infants, and could not be divested of their interest by a sale or exchange unless by the authority of a competent Court. His uniting with the executors in the deed to Bollman was a breach of the trust confided to him by the deed of Trouche.

The defect thus appearing in the title precludes respondents from the right of compelling specific performance of the contract referred to in the complaint.

Looking to the whole case, we do not think, in a matter resting on the sound and reasonable discretion of the Court, regulated, however, by general principles, that this is a case where costs should

follow the decree. The executors were acting in good faith, but misled as to the effect of the trust deed which Trouche executed.

The judgment of the Court below is reversed and the complaint dismissed, each party paying his own costs.

*Wright*, A. J., concurred.

*Willard*, A. J., concurred and filed the following separate opinion :

We are agreed, for the reasons stated in the opinion of the Chief Justice, that the vendor did not have, at the time of making his demand for a specific performance of the contract of sale, a good and marketable title to the lands agreed to be sold. It is therefore a matter of discretion whether the Court will permit the title to be completed at the present time. I think that such permission ought not to be granted. There is an outstanding encumbrance by judgment, such judgment creditor not having been made a party to the foreclosure suit. It may prove on investigation that the lien of that judgment is lost, but that fact should be determined in a proceeding to which the judgment creditor is a party, as the question involved is worthy of judicial consideration.

At all events, in my judgment, the objection urged tends to affect prejudicially the marketable value of the premises, and, as the question of allowing the completion of the title is one of discretion, and not of strict right, I think specific performance should not be decreed.

For the reasons above stated, I concur in the judgment of the Court.