## SHAW v. BARKSDALE.

1. It has been conclusively determined by this court that the Court of Probate has jurisdiction to order the sale of the lands of a decedent in aid of assets, on the application of the personal representative or of a creditor.

2. Where two tribunals have concurrent jurisdiction, the one which first obtains possession of the subject matter must adjudicate ; but it must appear that when the second action was instituted, there was pending in the other tribunal another action under which the relief sought in the second action could as readily be obtained.

3. An action in the Court of Common Pleas for foreclosure of a mortgage given by a devisee, did not prevent a proceeding in the Court of Probate by a creditor of the testator against the executor and devisees, to have this land sold for the purpose of paying testator's debts ; especially so, after judgment of foreclosure in the first action.

4. Notice of *lis pendens* in the foreclosure suit could only affect persons claiming under the devisee, and not those claiming by title paramount. Has such notice any force and effect after judgment rendered in the cause in which it was filed ?

5. This case distinguished from *Witte* v. *Clarke*, 17 S. C., 313.

6. The right of an unsecured creditor to have the lands of his deceased debtor applied to the payment of his debts, is superior to the lien of a mortgage of such lands given by the devisee of the debtor.

7. The debt under which a decedent's land was sold could not be presumed to have been paid, although more than twenty years old, where it was reduced to judgment against the executor within the twenty

years.  This case distinguished from *Campbell* v. *Sloan & Seignious*, 21 *S. C.*, 301.

8. The admissions of a devisee, which prevent the running of a presumption of payment of his testator's debt, are binding in like manner upon his mortgagee claiming under him.

9. The facts of this case do not show any *laches* nor raise an estoppel.

Before Fraser, J., Laurens, December, 1885.

This was an action by John D. M. Shaw and wife, Leonora, against C. D. Barksdale, master, Nathan Henry, executor, William L. Boyd, and John W. Henry, commenced January 26, 1885.  The opinion states the case.  The Circuit decree, after stating the facts, proceeded as follows :

I do not see in any of the dealings of these creditors any evidence of bad faith or unfair dealing, but only a struggle to secure the advantage of position from which to protect just claims, which they have allowed to be put in jeopardy by their previous dealings.  If the title of J. D. M. Shaw under the sale made by order of the Probate Court is good, this will be conclusive of this case.  Notwithstanding the able dissenting opinion of Chief Justice Moses, in *McNamee* v. *Waterbury* (4 *S. C.*, 156), the ruling in that case seems to have been acquiesced in, and the Probate Court has continued to exercise jurisdiction to sell real estate of deceased persons for the payment of debts, and many titles to land in this State are now held under sales made by that court for that purpose.  A Circuit Judge would not be justified in holding the question of that jurisdiction to be an open one.

I therefore assume that the Probate Court has jurisdiction to order sale of the real estate of Harrison Henry for the payment of his debts, if a proper case was made, and all necessary parties were before it.  In this case the executor and the only heirs and devisees were before the court.  In actions for partition judgment creditors of the several tenants in common are not necessary parties, and the purchaser of the land sold under proceedings for partition takes title free from any lien or encumbrance created by such judgment.  See *Simmons* v. *Simmons, Harp. Eq.*, 256 ; *Garvin* v. *Garvin*, 1 *S. C.*, 62, where the authorities are cited.  In *Keckeley* v. *Moore* (2 *Strob. Eq.*, 24), Chancellor

Dunkin, in delivering the opinion of the court, says: "To require the judgment and other lien creditors of all the distributees to be made parties to a suit for the partition of the estate of the intestate, would introduce a novelty in the practice of the court, and encumber the proceedings with delay and expense, not calculated to promote the final settlement and adjustment of estates between the parties in interest, which is a leading object of the act of 1791."

A mortgage is nothing more than a security for the payment of a debt, and there is no reason which would make a mortgagee of one of the tenants in common a necessary party to a suit for partition which would not require a judgment creditor of the tenant in common to be made a party. The tenants in common have no rights not subordinate to the rights of the co tenant to have a partition, and in the same way their rights are subordinate to those of the creditors of the deceased, and all who take under them take subject to these disabilities. There may be an exception where one or more tenants in common transfer their entire interest. If the rule prevails in matters of partition, it should prevail, and for the same reasons, in actions for the sale of real estate to pay the debts of a deceased person. When the action is in the Common Pleas, the lien creditors of the individual co-tenant have their liens transferred to the fund, and the purchasers have their titles discharged from them. See *Simmons* v. *Simmons*, *Keckeley* v. *Moore*, and *Garvin* v. *Garvin*, *supra*.

In the Common Pleas such creditors might intervene by petition or rule, and perhaps such might be a proper practice in the Probate Court. The mortgages in this case did not constitute such an alienation as could have defeated the claims of the creditors of Harrison Henry. *Warren* v. *Raymond*, 12 *S. C.*, 9. While the mortgagee of John W. Henry was not a necessary party, he would have been a proper party if the action had been in the Common Pleas, and perhaps also he might have been made a party in the Probate Court. If he had been, the only defence he could have set up so far as appears from the testimony, would have been that these notes held by J. D. M. Shaw had been paid in that there was a presumption of payment from lapse of time. This presumption could not have been successfully pleaded by

John W. Henry, because he conceded when he promised Shaw to furnish money to purchase these notes, and allowed him to purchase them, that they were then due and unpaid. This was somewhere between 1865 and the purchase by Shaw in 1872 or 1873, and probably just before 1872, when the first purchase was made. He certainly would not have been allowed to defeat Shaw in the Probate Court in 1883 and 1884 on this ground. If, therefore, W. L. Boyd, the mortgagee, had been a party to the action in the Probate Court, he would have been in no better position than John W. Henry, under whom he claims.

I do not think that there is anything in the case of *Campbell* v. *Sloan & Seignious* (21 *S. C.*, 301) inconsistent with this view. See *Wienges* v. *Cash*, 15 *S. C.*, 51; *McNair* v. *Ingram*, 21 *Id.*, 70, as to presumption of payment and statute of limitations. When the action was commenced in the Probate Court to sell this land to pay the debts of Harrison Henry, an action had been for some time pending in the Common Pleas to foreclose these mortgages to W. L. Boyd and W. L. Boyd as survivor.

It is said that the Common Pleas had first assumed jurisdiction of the case, and that therefore the proceedings in the Probate Court are void. In *Witte Bros.* v. *Clarke*, an action was pending to foreclose a mortgage given by a person who was in possession of land, and the court held that a proceeding in the Probate Court, commenced after the above action against the person in possession for assignment of dower, was void, because the Common Pleas had assumed jurisdiction. *Witte Bros.* v. *Clarke*, 17 *S. C.*, 317. The court seems to have regarded the claim for dower simply a lien on the land itself, and the plantation (Green Hill) as the subject matter of the action. It was here held that these liens for dower and under the mortgages should be settled in one action.

Whatever may be the principle on which that case rests, it does not seem to me to apply to this case. The subject matter of the action in the Probate Court was the interest and estate of Harrison Henry, deceased, in this land. The subject matter of this action to foreclose the mortgages of W. L. Boyd in the Common Pleas, was the individual interest of John W. Henry, which had been conveyed by way of mortgage to W. L. Boyd. Each

case could have proceeded on its own line, and after final judgment and titles acquired under them, the parties could have been brought to an issue in an action to recover the land itself. I think, therefore, that there was no conflict of jurisdiction, and that the proceedings in the Probate Court were valid.

I see nothing in the testimony to show that Mrs. Shaw in any way transferred any interest she may have had in this land to John W. Henry, even if she had any interest such as she could have conveyed without the intervention of her trustee, or that she would be now estopped from claiming it against the mortgagee of her brother. In my view, however, the whole estate of Harrison Henry passed under the deed to J. D. M. Shaw, and that the issues between the parties ought to be settled under this action to end the litigation.

It is therefore ordered and adjudged, that the defendant, William L. Boyd, individually, and as survivor of Boyd Bros., and all persons acting under them, or by their authority, be, and are hereby, perpetually enjoined from selling under the said judgments for foreclosure, or either of them, the said 800 acres of land described in the complaint in this case.

From this decree the defendant, Boyd, appealed upon the exceptions set forth in the opinion.

*Mr. W. H. Martin,* for appellant.

*Messrs. J. T. Johnson* and *Y. J. Pope,* contra.

July 12, 1886. The opinion of the court was delivered by

MR. JUSTICE McIVER. Sometime in January, 1865, Harrison Henry, having first duly made his last will and testament, died seized and possessed of a certain tract of land, in Laurens County, consisting of 800 acres, more or less. By his will he directed that, after payment of his debts, all his property should be kept together for the support of his wife, and for the maintenance and education of his two children, the defendant, John W. Henry, and the plaintiff, Leonora, who subsequently intermarried with her co plaintiff, John D. M. Shaw, with power in the executors to sell any portion of his estate and re-invest the proceeds, or to

sell a portion if necessary, for the support and education of his children. He further directed that when his son attained the age of twenty-one years, his estate should be equally divided amongst his wife and children, the third intended for his daughter being settled on her for her sole and separate use, and then "to go to the heirs of her body;" and the third intended for his wife being given to her for life, with remainder to his two children, to be equally divided betwixt them. The testator's brother, John H. Henry, was named as executor, and his wife as executrix, of the will; the former of whom qualified as such and continued in the management of the estate until his death in 1872, but the executrix named never seems to have qualified. John H. Henry left a will, of which Nathan Henry was executor, who thereby became the executor of Harrison Henry.

The widow of the testator and his son, the defendant, John W. Henry, continued to live together on the 800 acres of land, which seems to have been the homestead of the testator, until the death of the widow, some time in 1875, after which John W. Henry continued to reside there, paying the taxes, but paying no rent, until the sale of said land under the order of the Probate Court, hereinafter referred to, when the plaintiff, John D. M. Shaw, the purchaser at that sale, went into possession and still retains the same. Some time in 1872 the plaintiff, John D. M. Shaw, bought a sealed note from the administrator of Col. Irby, on which the testator was surety, and in 1873 he bought another sealed note on which the testator was likewise a surety. The testimony shows that the original intention was that these notes should be bought by Shaw and John W. Henry jointly, but the latter finding himself unable to furnish the money necessary to pay his portion, the purchase was made by Shaw alone, with his own funds.

On May 22, 1880, John W. Henry executed two mortgages, one to Wm. L. Boyd in his own right, and the other to him as survivor of Boyd Bros., embracing the 800 acre tract of land, as well as other valuable property in the town of Laurens, to secure the payment of his own individual debts. In January, 1881, Boyd commenced his actions against John W. Henry to foreclose these mortgages, the notices of *lis pendens* being filed on Jan-

uary 24, 1881, and a few days thereafter Shaw commenced his actions against Nathan Henry, as executor of Harrison Henry, on the two sealed notes which he had bought as above stated; and in all these actions judgments were entered in favor of the plaintiffs respectively, on March 9, 1881.

On October 13, 1883, proceedings were commenced in the Probate Court by Nathan Henry, as executor of Harrison Henry, against John W. Henry and Mrs. Shaw, who were then the only devisees and legatees of the said Harrison Henry, to subject this land to the payment of his debts; but there is no evidence that there were any others except those bought by Shaw and by him reduced to judgment against the executor, as we have stated above. Under this proceeding an order for the sale of the land in question was made by the Court of Probate on October 2, 1884, and after due advertisement the same was bid off by John D. M. Shaw for two thousand dollars, who paid the purchase money, received titles, and went into possession of the land. After some considerable delay, occasioned by the interference of other creditors of John W. Henry, the appellant, Boyd, proceeded to advertise the land for sale under his judgments of foreclosure entered March 9, 1881, whereupon this action was commenced to enjoin such sale.

The case was heard by Judge Fraser upon the pleadings and evidence taken in open court, who rendered his decree, in which, after stating that he saw no evidence of any bad faith or want of fair dealing on the part of the creditors, but only a struggle between them so as to secure the advantage of position to protect just claims, he said he regarded the question whether the title of Shaw under the sale ordered by the Court of Probate is good, as the turning point of the case. As to this, he held that the Court of Probate has jurisdiction to order the sale of real estate of a decedent for the payment of his debts where the personal estate is insufficient for that purpose; that all necessary parties were before the court when the order for sale was made; that John W. Henry could not in that proceeding have successfully interposed the plea of payment against the notes bought by Shaw, based upon the presumption arising from lapse of time, and his mortgagee could not; that the fact that the Court of Common Pleas

had, previously to the commencement of the proceeding in the Court of Probate, assumed jurisdiction of an action to foreclose the mortgages on the land, did not prevent the Court of Probate from taking jurisdiction of this proceeding to sell the land for the payment of the debts of Harrison Henry; and he therefore held that Shaw's title was good, and rendered judgment perpetually enjoining the appellant from selling the land under his judgments of foreclosure.

From this judgment the defendant, Wm. L. Boyd, appeals upon the following grounds: "I. Because his honor erred in, holding that the Probate Court had jurisdiction to order the sale of the land described herein. II. Because his honor erred in holding that the sealed notes held by J. D. M. Shaw were not presumed paid by lapse of time. III. Because his honor erred in holding that the plaintiffs are not estopped by their *laches* from claiming any interest in the 800 acres of land as creditor or devisee, or to the proceeds arising from the sale of the same." The remaining ground of appeal is couched in such general terms as not to call for any further notice, under the well settled rule of this court.

The first ground of appeal involves two questions: 1st. Whether the Court of Probate has jurisdiction to order the sale of real estate of a decedent for the payment of his debts, in the event of the personal estate being insufficient for that purpose. 2nd. Whether, if so, the Court of Probate could, in this case, take jurisdiction after the Circuit Court had already acquired jurisdiction.

The first question has been so conclusively determined by the decisions of this court, that it is not necessary to do more than to cite them. *McNamee* v. *Waterbury*, 4 *S. C.*, 156; *Scruggs* v. *Foot*, 19 *Id.*, 274. In the latter case this language is used, which ought to be conclusive: "In *McNamee* v. *Waterbury* (4 *S. C.*, 156), this court sustained a judgment of the Probate Court ordering real estate to be sold to aid personalty in the payment of debts, obtained upon the application of the administrator of the intestate. This settles the abstract question as to the jurisdiction of the Probate Court to order the sale of realty to aid personalty in payment of debts, but it does not determine in terms

whether this jurisdiction can be invoked by creditors as well as the administrator." The Chief Justice then goes on to show that it can, and it was so adjudged.

Our next inquiry, therefore, is whether the fact that, before the proceeding was commenced in the Court of Probate, by the executor of Harrison Henry for the sale of the land in question to pay the debts of his testator, the appellant had instituted an action in the Court of Common Pleas to foreclose a mortgage on the same land, executed by John W. Henry, would prevent the Court of Probate from taking jurisdiction of such proceeding. There is no doubt that the Court of Common Pleas, as well as the Court of Probate, has jurisdiction of a proceeding to sell the real estate of a decedent, in aid of the personalty, for the purpose of paying his debts; and there is as little doubt of the proposition that where two tribunals have concurrent jurisdiction, the one which first obtains possession of the subject matter must adjudicate, and neither party can be forced into another jurisdiction; but the question is, does this principle apply to the case in hand? We think it clear that it does not. It necessarily involves the idea that the claims set up in the two jurisdictions must be such as could be properly adjudicated by either tribunal, and it is quite clear that the claim of foreclosure set up by appellant in his action in the Court of Common Pleas could not have been adjudicated by the Court of Probate; and on the other hand, although the Court of Common Pleas would have jurisdiction of an action to sell lands for the payment of the debts of a decedent, provided the necessary parties were before it in such action, it is not perceived how the executor of Harrison Henry and his devisees, who would be necessary parties to such an action, could have required the appellant to make them parties to his action against John W. Henry to foreclose a mortgage given by him.

To make the principle relied upon applicable, it must appear that when the second action or proceeding was instituted there was another action pending in a tribunal having concurrent jurisdiction, under which the relief sought by the second action could as readily be obtained. This certainly did not appear in the present case, for, in addition to what has already been said, when the proceeding in the Court of Probate was commenced, the

action for foreclosure in the Court of Common Pleas was no longer pending, but had terminated in a judgment ; and in addition to the other obstacles indicated, that circumstance would have prevented the parties to the proceeding in the Court of Probate from having themselves made parties to the action for foreclosure, even if they had encountered no other objection.

The case of *Witte* v. *Clarke* (17 *S. C.*, 313), relied on by the appellant, differs widely from the present case. There the action brought by the plaintiffs had for one of its objects the ascertainment and settlement of all liens or incumbrances upon the land sought to be sold, and was actually pending at the time when Mrs. Clarke instituted her proceeding for dower out of the same land in the Court of Probate, where she obtained a judgment without the knowledge of the other parties interested, declaring her claim a prior lien to all others on the land in question ; and there was no reason why she could not have had herself made a party to such action, and obtained all the relief to which she was entitled under the action. Here, however, the Court of Probate certainly could not have rendered a judgment of foreclosure against John W. Henry, and it is difficult to understand how, on the other hand, the executor and devisees of Harrison Henry could have required the appellant to make them parties to his foreclosure suit, especially after it had culminated in a judgment. The filing of the notice of *lis pendens,* even if such notice can be regarded as of any force and effect after judgment rendered, cannot affect the case. It operated merely as a warning to all who might purchase from John W. Henry that such purchase would be subject to any judgment that might be rendered in the action in which such notice was filed. But how it could affect the rights of those who claimed under a paramount title to that of John W. Henry, we do not perceive.

Our next inquiry is whether there was any error on the part of the Circuit Judge in holding that the sealed notes were not presumed paid by lapse of time. The testimony shows that at the time Shaw commenced his actions, and at the time he recovered judgment against the executor of the testator, the twenty years had not run out, and therefore the plea of payment could not have been successfully interposed to those actions.

Hence it cannot be said in this case that the executor, through fraud or collusion, or even through negligence, has permitted a claim to be established against the estate of his testator. On the contrary, it must be assumed that the court, with the proper parties before it, determined that these notes were valid debts of the testator as late as March 9, 1881. In this respect, as well as in many others, there is a marked difference between this case and that of *Campbell* v. *Sloan & Seignious* (21 *S. C.*, 301), for there the action against the executors "was not commenced until nearly three years after the twenty years had run out;" and, by reference to page 307, it will be seen that this circumstance was pointedly mentioned. Besides, in that case there were several other circumstances showing fraud and collusion, while in this case there is nothing of the kind.

It seems to us that where a creditor of an intestate in good faith recovers judgment against the legal representative on a bond or other like obligation before the twenty years have run out, that is a demand for the payment of his debt in the most effectual way, against the only person from whom such demand could legally be made, and the judgment is a judicial ascertainment of the fact that the debt is not then paid, and gives a new point from which the currency of the period necessary to presume payment commences, not only in favor of the legal representative, but also in favor of the heir or devisee of the decedent. This doctrine, however, cannot be applied where the action is not commenced until after the twenty years have run out, because in such case the presumption of payment has arisen before any demand in legal form was made by the creditor for the payment of his debt, and before anything was done by any one authorized to represent the estate tending to rebut the presumption. After the presumption has once arisen no act of the creditor, or any one assuming to represent the estate of the debtor, can have the effect of creating any new debt, or even reviving the legal obligation of any pre-existing debt, which has once lost such legal obligation by the presumption arising from the lapse of time. Under this view it is quite clear that there was no error in holding that the debts claimed by Shaw against the estate of Harrison Henry were not to be presumed paid by lapse of time; for although the

twenty years had run out before the commencement of the pro-
ceedings in the Court of Probate, yet such period had not expired
before the actions were commenced by Shaw against the executor
of Harrison Henry, nor before judgments were recovered in such
actions.

But in addition to this we agree with the Circuit Judge that
inasmuch as John W. Henry could not have successfully inter-
posed the plea of payment, based on the presumption arising
from lapse of time, because of his acknowledgment of these
debts—the one in 1872 and the other in 1873—long before the
expiration of the twenty years, the appellant, his mortgagee,
claiming under him, could not do so either. So that in any view
of the case we do not think the second ground of appeal can be
sustained.

As to the third ground, it might be sufficient to say that we see
no evidence in the record that the question of laches was ever pre-
sented to or passed upon by the Circuit Judge, and hence, strictly
speaking, that question is not properly before us. But as this
question has been argued here on both sides, and as it is some-
what connected with the question raised by the second ground of
appeal, we will not decline to consider it. We see no ground for
imputing laches to the plaintiffs in this case, and nothing to estop
them from asserting their claims as against the appellant. John
D. M. Shaw holds strictly legal claims against the estate of Har-
rison Henry, which, in good faith, he bought up long before they
were affected by any presumption of payment arising from lapse
of time, and these claims, within the time allowed him by law
for the purpose, he sued to judgment against the only person
whom he could sue. How, in the face of this fact, he can be
said to have been guilty of laches, we are unable to see.

Nor do we think there is any more ground for the estoppel set
up by the appellant. It does not appear that either Shaw or his
wife did anything, or omitted to do anything which they ought
to have done, whereby the appellant was induced to take the
mortgages from John W. Henry. Indeed, the testimony shows
that the Shaws knew nothing of the mortgages until after they
were executed ; and there certainly is no evidence that any con-
duct of either of them was calculated to induce the appellant to

believe, when he extended credit to John W. Henry, that the eight hundred acres of land belonged to him exclusively. True, he was in possession, but as tenant in common he had a right to such possession, and there were the records of the Court of Probate upon which was spread the will of Harrison Henry, showing to the appellant, and every one else, that he was such tenant in common with his sister, Mrs. Shaw, and there is not the slightest evidence that he had ever asserted any claim in hostility to her rights.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.