## PENDERGRASS v. PENDERGRASS.

1. The right of a tenant in common to partition is paramount to the lien of a judgment against the other co-tenants, and if the judgment be not enforced by sale under execution before action for partition is instituted, such judgment creditor is not a necessary party.
2. Where an administrator died soon after the war in advance to his intestate's estate, his executor held entitled to be reimbursed primarily out of the unadministered personal assets, or, that failing, out of the lands of the intestate. The interest of the distributee is only in what remains.
3. Such indebtedness having been established in action for accounting with all parties in interest before the court, and no objection taken to the absence of an administrator *de bonis non*, it may be presented by the executor of the deceased administrator as a claim against lands of the intestate sought to be partitioned.

4. A senior judgment creditor of a distributee holds a lien on the distributee's share in the lands of her intestate prior to that of a junior judgment obtained by the administrator on notes given to him by the distributee for purchases of personalty at the estate sale.

Before KERSHAW, J., Chester, October, 1885.

The opinion states the case. The Circuit decree was as follows:

This case was heard upon the report of the referee and exceptions taken thereto. The case is fully stated in the report, and it is not necessary to repeat the statement here. I shall first consider the exceptions taken by Mr. Patterson on behalf of W. T. D. Cousar & Son.

1. The first exception embodies a fact, but in the view I have taken of the case it is not material.

2. The second exception objects, that there was no proof of any debt due from Preston Worthy to Henry Worthy, and that there was no representative of Preston Worthy before the court, either in the case of *F. B. Worthy, executor, v. Rebecca Pendergrass and David Pendergrass,* or in that of *W. W. Worthy* against *F. B. Worthy.* In order to a proper understanding of this exception, a brief recital is necessary. The case of W. W. Worthy against F. B. Worthy was an action brought by the distributees of the estate of Preston Worthy against the executor of the deceased administrator, Henry Worthy, calling for an account by him for the administration by his intestate of the estate of the said Preston Worthy. This action was brought in the Probate Court, and all the heirs and distributees of the estate of Preston Worthy were before the court as parties thereto.

The complaint here is, that there was no administrator *de bonis non* of Preston Worthy's estate before the court as a party. Since the cases of *Kaminer* v. *Hope,* 9 *S. C.,* 253, and the later case of *Strickland* v. *Bridges,* 21 *Id.,* 21, there can be little doubt that the case in question would have been dismissed, or at least delayed until such proper party had been brought into court, if the objection had been then made and insisted on. It was not made, however, but the parties before the court all united in an agreement that the action should await the result of the same accounting there demanded, then being taken in the Circuit Court;

and that a decree should be entered by the Probate Court in that case in conformity with whatever decree should thereafter be made by the Circuit Court upon said accounting; and a decree to that effect was accordingly entered by the Probate Court in accordance with said agreement.   The Probate Court having jurisdiction of the subject-matter, the parties to this agreement are bound by it and by the decree made thereunder.   *Waller* v. *Cresswell*, 4 *S. C.*, 355; *Miller* v. *Furse, Bail. Eq.*, 188; *James* v. *Smith*, 2 *S. C.*, 185; *Freem. Judg.*, § 330, note 1; *Nashville, &c., Railway Co.* v. *United States*, 113 *U. S.*, 266.

The other suit mentioned in this exception, and the decree in which was adopted as above stated, was brought by F. B. Worthy, as executor, against Rebecca Pendergrass and David Pendergrass, her husband, on a note given by the former (who was the widow of Preston Worthy) and her husband, David Pendergrass, for purchases made by her at the sale of the personal property of the estate of Preston Worthy by the administrator, Henry Worthy. The note was made payable to Henry Worthy, as administrator, and, therefore, was properly sued by F. B. Worthy, as executor, in order that he might properly account for the proceeds of the sales of the personal property of Preston Worthy, made by Henry Worthy as administrator.

In answer to this action, the defendant, Rebecca Pendergrass, among other defences, claimed that her distributive share, one-third, of the estate of her said deceased husband, Preston Worthy, should be set off against any recovery that might be had upon her said note.  This rendered it necessary that the amount of that interest should be ascertained, which could only be done after an accounting by the said F. B. Worthy, as executor of Henry Worthy, for the administration by the latter of the estate of Preston Worthy.   This accounting was accordingly had under the decree of the court in that case, and it was this accounting which was adopted by the Probate Court in the cases there pending, as above set forth.  After a protracted litigation, judgment was given by the Circuit Court against the said Rebecca Pendergrass and John C. McFadden, administrator of the estate of David Pendergrass, then dead, on the note aforesaid, for $2,608.71, and for $344, costs.  This judgment bears date 26th March, 1885, the

present action being then pending. It was also decreed by the
court in that case, that there was a balance due to Henry Worthy,
on his accounting as administrator of Preston Worthy, amounting
to $1,602.93, at the date of the decree, and the estate of Preston
Worthy was adjudged liable for $344, costs of said case, to be
paid by F. B. Worthy out of the estate of Preston Worthy in his
hands; meaning thereby, no doubt, the amount recovered by him
in that action against the said Rebecca Pendergrass and McFad-
den, administrator.

On May 21, 1885, after the rendition of the last recited decree,
an order was taken in the Probate Court, in the case then pend-
ing, in accordance with the decree previously made therein; under
the agreement of the parties above mentioned, making the decree
of the Circuit Court, upon the accounting for the administration
of the estate of Preston Worthy by Henry Worthy, the decree of
the said Probate Court in that cause, and directing that the costs
of that case be paid by F. B. Worthy out of the recovery had by
him in the case of F. B. Worthy, executor, against Rebecca Pen-
dergrass and others. The course pursued by the parties to the
suit in the Probate Court appears to have been wise and proper,
inasmuch as it avoided a repetition there of the same protracted
and expensive litigation which took place in the case in the Cir-
cuit Court, which could hardly, if prosecuted, have led in the end
to any different result.

As already said, I regard the decree of the Probate Court as
binding on all the parties to that suit, and regard that judgment
as estopping them. But even if it could not stand as a judgment,
the parties would be concluded by their agreement to adopt the
result of the accounting in the Circuit Court. My opinion is,
however, that it is binding as a consent decree of a court having
jurisdiction of the subject-matter; the objection, for the want of
parties, being waived by the parties before the court. If the
objection had not been waived, the defect might have been sup-
plied by amendment; but as it has turned out, an administrator
*de bonis non* would have been a merely formal party, the real
parties in interest being all before the court.

3. The referee, after ruling out the record of the case in the
Probate Court as incompetent in reply, subsequently, in consider-

ing his report, admitted the same, and gave effect to it in making up his decree without having given the defence an opportunity to reply thereto.    No question is made as to the correctness of that decree in its result.    No possible advantage is suggested, which might have been attained if the defendants had been permitted to reply to it by evidence.    No motion was made to recommit the report, in order that such evidence in reply might be introduced. All the objections to the legal effect of the decree have been fully presented and discussed here, and I can see no reason why its effect may not now be fully determined, in justice to all parties, without reopening the litigation now drawing to a close.    The exception is overruled, because it does not appear that anything could be gained by sustaining it.

Another reason for not sustaining this exception may be found in this, that the record of the case in the Circuit Court having been put in evidence by the plaintiff in the opening of his case, the defendants' counsel, after plaintiff closed and after evidence for the defence had been offered, objected to the competency of the decree, calling attention to the fact that the decree could not affect the parties to the present suit.    It was to meet this objection that the record of the proceedings in the Probate Court was offered in reply.    No objection was made to the introduction of the former record when offered.    As soon after the objection had been made as an opportunity occurred, the record of the Probate Court was offered to meet the objection.    If the plaintiff was too late in offering this evidence, the defendants were too late in offering their objection also.

4. The next objection made is that the record from the Probate Court was inadmissible, under any circumstances, against the creditors of the parties, and others who were not parties, to that suit, but who were purchasers, as it is said, of the interests of some who were parties.    To this it is sufficient to say that the interests claimed by the parties referred to were acquired, if at all, after the commencement of the said suit, and would only entitle them to such rights and interests as should be adjudged to the parties under whom they claim.    The judgment, if binding at all, was binding not only upon the parties, but their privies— all who claim under them.

5. The fifth exception insists that the claim of Cousar & Son, creditors of Rebecca Pendergrass, is entitled to be first paid out of her share of the estate sought to be divided, in preference to the claim of F. B. Worthy, executor, for the balance ($1,602.93) adjudged to be due his testator by the estate of Preston Worthy aforesaid. In connection with this exception will be considered that taken by the plaintiff, involving the question of the rank of the judgment against Rebecca Pendergrass for $2,608.71, recovered by F. B. Worthy, executor.

This is an action brought for the partition of the real estate of Preston Worthy, deceased. The only thing remaining of the estate is a tract of land. It is brought to the notice of the court that there is a balance due to the estate of the deceased administrator of Preston Worthy on his accounts as administrator. In other words, it appears that the said administrator paid and discharged demands against his intestate, out of his own means, to the amount of $1,602.93, after exhausting all the personal assets of his intestate which had been received by him. The lands of a decedent are made by statute liable for the payment of debts, as well as the personalty. The latter is first liable, but when they have been exhausted, the lands are equally liable for what debts remain. An administrator who has paid debts of his intestate out of his own means, is entitled to be reimbursed out of the realty, and partition will never be made, under these circumstances, without first providing for that debt. It will be the first charge upon the land.

The debt due to the estate of Preston Worthy by Rebecca Pendergrass, established by the recovery of F. B. Worthy, as executor, against her for purchases made at the sale of the personal property of that estate by Henry Worthy, as administrator, is to be first paid out of the interest of the said Rebecca in the land in question. Should there remain a balance due thereon after paying the entire portion of Rebecca Pendergrass thereto, and the share of David Pendergrass, such balance would remain as a judgment debt against her and the estate of David Pendergrass, binding their property and estate only according to its legal *status* and lien as a judgment.

In order to see plainly that this debt is a first charge on the

share of Rebecca Pendergrass, it is only necessary to remember that the entire estate of Preston Worthy, real and personal, after the payment of debts, belonged to his heirs and distributees as tenants in common, and that Rebecca Pendergrass has already received out of the property $2,608.71, more than her share of that portion already disposed of. Is she to retain this and still have her equal share of the remainder of the common funds? Surely not; until she has replaced the excess so received by her, she can receive nothing. It is scarcely necessary to say that her individual creditors can have no claim to this land or its proceeds, when sold, until all the equities between her and her co-tenants shall have been fully satisfied. A purchaser of the undivided interest of one of the co-tenants, or a creditor of such tenant, can be in no better condition than the party whose rights have been acquired, or against whom the claim is held. *Rabb* v. *Aiken*, 2 *McCord Ch.*, 125; *Riley* v. *Gaines*, 14 *S. C.*, 457; *Keckeley* v. *Moore*, 2 *Strob. Eq.*, 23; *Burris* v. *Gooch*, 5 *Rich.*, 6. The judgment of Cousar & Son against Rebecca Pendergrass would only attach to so much of her share of the proceeds of the land as remains after paying the amount due by her to the estate of Preston Worthy.

*Mr. Giles J. Patterson*, for appellants.

*Messrs. W. A. Sanders, S. P. Hamilton*, and *A. G. Brice*, contra.

November 27, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. To have a clear view of the points made in this case, it is necessary to make a short statement. Many years ago (1854), Preston Worthy died intestate, leaving as his heirs at law his widow, Rebecca, and three children, William W., Mary B., and Preston Worthy, jr., the latter of whom died in his infancy. The intestate was seized and possessed of a considerable personal estate and two tracts of land, the "Broad river" tract and the "home place." Henry Worthy, brother of the deceased, administered upon his estate, and sold most, if not

all, of the personal property. At this sale the widow, Rebecca, was a large purchaser, and gave to the administrator her notes, with David Pendergrass and others as her sureties. She soon after married the said Pendergrass. In 1855 the widow, Rebecca, instituted proceedings in equity, *Rebecca Worthy* v. *Mary B. Worthy et al.*, for partition of the lands. The administrator, Henry Worthy, admitted that the personal estate was sufficient to pay the debts, and the "Broad river place" was sold and the proceeds divided, under order of the court, leaving the "home place" as a home for the widow and children. In 1866, before the estate was finally settled, Henry Worthy, the administrator, died, leaving a will of which F. B. Worthy is the executor, and since that time there has been no legal representative of the estate of Preston Worthy.

Matters stood in this condition, the estate unsettled and the widow and children living on the "home place," during the war and down to 1874, when F. B. Worthy, executor of the administrator, sued Rebecca Pendergrass and her surety, David Pendergrass, on the notes for the purchases of the said Rebecca at the sale of the administrator, as before stated, viz., *F. B. Worthy, executor*, v. *Rebecca Pendergrass and David Pendergrass*, her surety. In this action it was claimed that the share of Rebecca in the personal estate (including the notes sued on) should be set off against the note for her purchases, which was allowed; and in order to ascertain the amount of that share, the court ordered the plaintiff, F. B. Worthy, executor, to account for Henry's administration of Preston Worthy's personal estate. After a protracted litigation, it was finally (in 1885) ascertained that F. B. Worthy, as executor of Henry, was entitled to judgment against Rebecca and David Pendergrass for $2,608.71 and costs, and accordingly judgment was so rendered in the Common Pleas; and in the same accounting it was incidentally ascertained that the estate of Henry, the administrator, was in advance to the estate of his intestate, Preston, in the sum of $1,602.93.

Pending this long litigation in the Common Pleas, William W. Worthy, one of the distributees, instituted proceedings in the Probate Court against F. B. Worthy, as executor of Henry Worthy, entitled *W. W. Worthy et al.* v. *F. B. Worthy, executor, Rebecca*

*Pendergrass, et al.*, to account for Henry's administration of the estate of Preston. To this suit all the heirs of Preston Worthy, or their legal representatives, were made parties, and by consent a decree was rendered (1885) precisely in accordance with the result of the accounting in the case above stated of *F. B. Worthy, as executor*, v. *Rebecca Pendergrass and David Pendergrass*, establishing that the administrator, Henry, was in advance to his intestate, Preston, in the sum of $1,602.93.

In 1874 David Pendergrass, who had intermarried with the widow, and was living with her on the home place, purchased the interest therein of William W. Worthy, and in 1880 conveyed the same to his two sons, Addison and Joseph Pendergrass. In 1866 Mary B. Worthy, the other distributee, married Waties Pendergrass, and died intestate in 1873, leaving as her heirs and distributees her husband, Waties Pendergrass, and her children, Mary E., Ora, William, Preston, and David Walker. Waties Pendergrass administered upon her estate, and in 1882 instituted this action for partition of the "home place." None of the heirs answered, but F. B. Worthy came in by petition, claiming that, as executor of Henry Worthy, he had demands against Rebecca Pendergrass to a large amount, which were about to go into judgment against her, to which her share of the lands should be applied; and as these claims were on notes for purchases at the sale of Henry Worthy, as administrator, the share of Rebecca in the land descended should be first applied to them. W. T. D. Cousar & Son also came in, claiming that the share of Rebecca should be first applied to a judgment held by them against her for $296.20, rendered as early as March 18, 1882, on notes bearing date in 1881.

The issues were referred to J. L. Glenn, Esq., as special referee, who held that the advances made by Henry Worthy, as administrator, should be refunded before partition out of the whole land (except the share of W. W. Worthy, which had been "*bona fide* aliened"); and that the share of Rebecca in the remainder should be applied to the judgments against her, according to their respective dates. On exceptions to this report, the Circuit Judge held that F. B. Worthy, as the representative of the estate of the administrator, Henry, should be reimbursed the amount which it

appeared the administrator was in advance to the estate of his intestate before partition, and that the share of Rebecca in the remainder of the land should be applied to the judgment of F. B. Worthy, executor, in preference to that of Cousar & Son, which was older. From this decree Cousar & Son appeal to this court upon the following exceptions:

"I. Because the decree finds that the judgment rendered March 26, 1885, in favor of F. B. Worthy, executor, against Rebecca Pendergrass and David Pendergrass, is a preferred judgment to that of Cousar & Son against Rebecca Pendergrass, rendered March 18, 1882; whereas the decree should have found that the judgment of Cousar & Son is a prior and preferred lien to that of F. B. Worthy, executor, on the distributive share of Rebecca in the lands sought to be partitioned herein, and entitled to be first paid.

"II. Because the decree finds that the alleged judgment of March 25, 1885, for $1,602, in favor of the estate of Henry Worthy against the estate of Preston Worthy, is a valid judgment and a first lien on the premises, the subject of this action; whereas the decree should have found that the said alleged judgment of $1,602 is not a valid judgment against the estate of Preston Worthy, because that estate was not represented in the action by an administrator *de bonis non*, and no claim was made in the pleadings for a debt against the estate of Preston Worthy, and because Rebecca Pendergrass was the only distributee of Preston Worthy, who was a party to the action.

"III. Because the decree finds that the judgment of the Probate Court in the case of *W. W. Worthy* v. *F. B. Worthy, as executor*, et al. (May 21, 1885), offered only as evidence of the cause of action in *F. B. Worthy, executor*, v. *Rebecca Pendergrass et al.*, was not only admissible as evidence against Cousar & Son, who were not parties thereto, but recognizes it as the cause of action itself, and directs that it shall be paid.

"IV. Because the said decree confirms the action of the referee in considering the decree of the Probate Court as proper evidence in reply, when objection was made to it at the time it was offered, and such objection sustained, and then afterwards considered it in making up his report; whereas the decree should have found

that the decree of the Probate Court was not competent evidence in reply in any sense, as Cousar & Son were not parties to it, and neither they nor other parties to the action had offered evidence against the cause of action set up in the judgment and decree of *F. B. Worthy, executor,* v. *Rebecca Pendergrass et al.* If evidence, it was cumulative only, and, therefore, incompetent."

This is a proceeding on the equity side of the court for the partition of a remaining tract of land of the estate of Preston Worthy, who died intestate many years ago. It seems that after the death of the intestate, Mrs. Pendergrass, one of the distributees, contracted debts as follows : to the administrator for purchases at the sale of the personalty, upon which, after a long litigation, on March 20, 1885, the executor of the administrator recovered judgment against her and her surety for the sum of $2,608.71. In this action the plaintiff, as executor of the administrator, was ordered to account for his testator's administration of the estate of the intestate, Preston Worthy; and in that account-ing it appeared that Henry Worthy, the administrator, was, at the time of his death (1866), in advance to the estate of his intestate, Preston, the sum of $1,602.93. In the meantime, in 1881, the said Rebecca had contracted a debt to W. T. D. Cousar & Son, upon which they recovered judgment against her in 1882 for $297.90. The questions are as to the rights of these different parties in the land sought to be partitioned.

While it is true that a distributee has (subject to the payment of all debts of the intestate) legal title to his share of land descended, which may be bound by the lien of a judgment and sold under execution, yet that title is qualified and limited by the right of the co-distributees to have partition of the property. If the judgment is not enforced by a sale before partition, the lien is dissolved, and in the proceeding to partition judgment creditors of distributees need not be made parties, but they may apply to have their respective rights in the proceeds. *Rabb* v. *Aiken*, 2 *McCord Ch.*, 119; *Keckeley* v. *Moore*, 2 *Strob. Eq.*, 21; *Burris* v. *Gooch*, 5 *Rich.*, 6; *Riley* v. *Gaines*, 14 *S. C.*, 456.

First, then, as to the claim of F. B. Worthy, as executor of Henry Worthy, to be reimbursed the amount which the administrator, Henry, was in advance to the estate of his intestate, Pres-

ton. An administrator is a *quasi* trustee of the property of the intestate. His duty is to sell it, pay the debts which are primarily payable out of that property, and distribute the remainder. He has no right to encumber the estate by new contracts; but we think it is settled that if, in the administration of the estate, he, in good faith and for the benefit of the estate, pays the debts or obligations of the estate out of his own pocket, he is to that extent said to be in advance to the estate and entitled to be reimbursed out of it. See *Watts* v. *Watts*, 2 *McCord Ch.*, 78; *Lay* v. *Lay*, 10 *S. C.*, 215; 1 *Story Eq. J.*, § 91; 3 *Wms. Exrs.* (6 Am. Ed.), *1861, and notes, citing, among other authorities, *Munroe* v. *Holmes*, 13 *Allen*, 109, in which Judge Hoar said: "An administrator is not obliged to incur expenses beyond the means which are placed in his power to discharge them, and he may, and usually does, protect himself by not permitting the estate to become his debtor. But circumstances may exist in which it is certainly not wrong in him, although it may not be a positive duty, to make advances for the benefit of the estate which he administers; and when by his death or removal he may be unexpectedly deprived of the power to reimburse himself for these advances, when they have been made in good faith and for the benefit of the estate, we can have no doubt that they in some form become a charge upon the estate in the hands of the succeeding administrator," &c. In this case, the administrator died many years ago, leaving the estate in an unsettled condition. In the meantime, the war and other causes may have rendered unavailable some of the assets upon which he had a right to rely for the purpose of reimbursing himself. We concur with the Circuit Judge, that F. B. Worthy, as executor of Henry, the administrator, is entitled to be reimbursed the amount which he was in advance to the estate of his intestate, Preston.

It is urged, however, that this alleged advance had never been judicially ascertained; that there could be no judgment binding the estate of Preston, for the reason that the executor of Henry, the administrator, did not represent the estate of his intestate, Preston, and no administration *de bonis non* had ever been appointed. The advance claimed could only be made to appear by an accounting of the estate of the administrator represented by

F. B. Worthy, as executor. That accounting was taken by order of the court first in the Common Pleas and afterwards confirmed in the Probate Court, where all of the distributees of Preston Worthy were parties, and they did not make the technical objection as to the want of an administrator *de bonis non.* Besides, the view taken does not rest on the judgment as a lien, but simply upon the satisfactory existence of such advance, like a note called in and proved against the estate of the intestate, and properly brought to the attention of the court. We are judicially satisfied of the fact that such advance was made.

How shall this charge upon the estate be provided for? The personalty is primarily liable for the payment of all the debts of the intestate, and if there are such assets available, they should be first applied in discharge of the advance, to the relief of the land. If the administrator had lived and received other assets, he would have had the right, without any order of court, and doubtless would have exercised it, to appropriate the first passing through his hands in its payment. As was said in *Lay* v. *Lay, supra:* "If the first executor had remained alive and received further sums of money, he would have been, in the ordinary debit and credit account, duly credited with the amount previously overpaid. He would thus have discharged the amount received, and could only be called to account for having distributed unequally, and thus preferred some of the legatees." We do not see why, the administrator being dead, the same rule should not apply to his executor. If there are assets yet to be realized, they should, if available, be collected and applied first to reimburse the estate of the administrator. As we understand it, the judgment for $2,608.71 did not enter into the accounting of F. B. Worthy, as executor, and is, therefore, additional assets. If that judgment or any other asset is available, it should be collected and applied to the said advances. But if that judgment cannot be realized in whole or in part, and there are no other available assets, then there is nothing of the estate left but the "home place," the whole of which, not Rebecca's share alone, is charged with the said advances, which must be first paid out of the proceeds of sale.

Second. Has an administrator, as to a judgment against a distributee for purchases at his sale of the personalty, any right,

legal or equitable, to apply the share of that distributee in the lands of the intestate in preference to an older judgment of a stranger against the distributee? No case has been cited deciding the exact point, and we have not been able to find one in or out of the State. Both the real and personal property of a decedent may, in a certain sense, be called "his estate." The same parties, as heirs or distributees, are entitled to both, and we can appreci-ate·the view, that, considering the estate as a unit, a distributee, who has received more than his share of the personalty, should not be allowed to get any share of the land until the other parties are made equal to him. But the rules applicable to the two kinds of property are so very different, that in practice the matter is not free from difficulty. By law, the legal title to the personalty passes to the administrator, who is charged with it for the purposes of administration; while the land, subject, of course, to the debts of the intestate, does not go to the administrator, but descends directly to the heirs. The duty of the administrator is simply to administer the personal estate. The lands are not chargeable to him, and he has no control over them or the proceeds of their sale. It is true, that if there is a deficiency of assets for the payment of debts, the lands also are made assets for that purpose; but that can only be done in the particular manner prescribed by law. A debt for the personalty is not a debt of the ancestor, but of the administrator, which at his peril he must secure, by bond or otherwise, without the least regard to the fact whether the purchaser may or may not be a distributee and entitled to a share of the lands.

As such, the administrator has no control over the land or its proceeds. *Keckeley* v. *Moore*, 2 *Strob. Eq.*, 23; *Ex parte Foster*, *Rice Ch.*, 19; *Garlick* v. *Patterson*, *Cheves Eq.*, 27; *Bank* v. *Inglesby*, *Speer Eq.*, 400; *Mauldin* v. *Gossett*, 15 *S. C.*, 576; *Williams* v. *McCardell*, 14 *Id.*, 221. In the last case cited it was held that, "Where a distributee receives from the administratrix more than his share of the personal estate of his ancestor and then dies, his interest in the ancestor's real estate cannot be subjected exclusively to the repayment of such excess, but must be applied to the payment of all his debts owing at the time of his death, including such over-payment, in the order prescribed

by statute." That is this case precisely, except that there the debtor distributee was dead; but we are not able to see what difference that could make in reference to liens upon the property. If the right contended for here—that the administrator, as creditor, can absorb the whole share of the debtor in the land before other creditors get anything—had existed, it would, as it seems to us, have been applied in that case, notwithstanding the death of the distributee. Relying on the bond and personal security of the purchaser according to the terms of his sale, the administrator took no assignment of, or lien, upon Rebecca's share of the land; and we cannot clearly see how, as to that interest, he has any higher rights than other creditors.

We think, after the advances to the estate of his intestate by the administrator, Henry Worthy, are refunded as above provided for, that the share of Rebecca in the remainder of the "home place" should be applied as follows: first, to the senior judgment of Cousar & Son, reduced, of course, by all proper credits, and without prejudice to any question as to homestead which the said Rebecca may make, as suggested in the "Brief," but upon which the Circuit Judge made no ruling; and, second, that the remainder of her share, as well as that of her late husband, her surety, be applied towards satisfaction of the judgment of F. B. Worthy, executor, against Rebecca Pendergrass and the representative of David Pendergrass, to be distributed by the said F. B. Worthy, executor, among the distributees of Preston Worthy, excluding the said Rebecca, who received in discount her share of the personal estate.

The judgment of this court is, that the judgment of the Circuit Court be modified so as to conform to the conclusions herein announced, and in all other respects affirmed.