## MOWRY v. CROCKER.

1. A mortgage duly taken and recorded without any notice to the mortgagee of a prior unrecorded paper claimed to be a mortgage, has priority of lien over this unrecorded mortgage.

2. A took an informal mortgage from a debtor which was never recorded; B, a subsequent creditor without notice of this older mortgage, took also an informal mortgage on the same land, and this mortgage was copied into the mortgage record book; C, a subsequent creditor to both A and B, took a valid mortgage on the same land, which mortgage was at once and duly recorded. C had no notice of A's mortgage and no actual notice of B's mortgage, although his attorney had seen the copy of it in the record book. After this, A took another informal mortgage in lieu of the first one, alleged to be lost, but did not record it until he heard of B's mortgage, more than 40 days after the date of his (A's) last mortgage. *Held*, that A could not claim priority over C, by reason of his priority over B who had priority over C, for the reasons that B had no priority over C, that A had actual notice of B's mortgage before A's mortgage acquired, by its record after time, a lien at the date of its record, and that B and C being subsequent creditors without notice of A's first lien, were entitled to priority from the date of their mortgages.

3. Is a mortgagee affected with notice of an informal mortgage from having seen a copy of it on record?

4. In an equity cause, costs are within the discretion of the Circuit Judge, and his discretion was not abused in this case.

Before HUDSON, J., Union, March, 1889.

This was a suit by William S. Mowry and others, assignees of L. D. Mowry & Son, against William Crocker, William Jones, William Jefferies, and others, commenced January 26, 1886. The opinion states the case.

*Mr. D. A. Townsend*, for appellant.

*Messrs. William Munro* and *Lord & Hyde*, contra.

October 20, 1890.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The questions presented by this appeal are as to the priorities of certain alleged liens on a certain tract of land in Union County.   They grow out of the following facts: On the 24th of August, 1880, the defendant Crocker executed a mortgage, covering the real estate in question, to one L. D. Mowry, who subsequently assigned the same to the plaintiffs. This mortgage was duly recorded in the proper office on the day of its date, and the proceeds of the sale of the mortgaged premises have proved insufficient to pay the amount due on said mortgage. The defendant, Wm. Jones, claimed to hold a first lien on said tract of land by virtue of a paper of which the following is a copy:

"THE STATE OF SOUTH CAROLINA, |
        "Union County.              }

"Know all men by these presents that I, William Crocker, of the State and County aforesaid, for and in consideration of the sum of five hundred dollars to me in hand paid, by Wm. Jones, of the State and County aforesaid, and to secure to the said William Jones the payment of the said sum of five hundred dollars, with the interest at ten per cent. from date, I hereby mortgage to the said Wm. Jones, his heirs and assigns, my home tract of land, lying, * * * containing two hundred and seventy-two

acres. more or less.   And it is agreed by the said parties that
this mortgage is due on the first day of November next.

"Witness my hand and seal this the first day of May, A. D.
1877.       (Signed)       WILLIAM CROCKER, [SEAL.]

"Test: RHODY ORR."

To this paper was appended the affidavit of the subscribing wit-
ness, Rhody Orr, that "she saw William Crocker sign the within
mortgage," and the same was recorded in the office of the register
of mesne conveyances on the 7th of May, 1877.

The defendant, Wm. Jefferies, likewise claims a first lien on
said tract of land, by virtue of a paper of which the following is
a copy:

"$432.88.   One day after date I promise to pay William Jef-
feries or order four hundred and thirty-two 88–100 dollars, with
annual interest at 10 per cent. from January 1st, 1879, accord-
ing to note given to him in May, 1875, for cash advanced, which
note is lost, and this one is hereby given instead.   The cash
advanced was for the payment of a balance due on the land where-
on I now live, and said land stands for the said claim and inter-
est thereon, until paid for.   The said lost note is hereby acknowl-
edged to have been a prior lien on said land to all other liens or
mortgages on said place, and this note shall fill, to all intents and
purposes, the place of the lost one.   In witness whereof I have
hereunto set my hand and seal May 19th, 1881.

           "(Signed)       WILLIAM CROCKER, [SEAL.]

"Signed in presence of us:

     "W. B. McKINNEY,
     "W. H. CROCKER."

This paper was recorded in the office of register of mesne con-
veyances on the 24th of August, 1881.   In the further consider-
ation of this case these two papers, though certainly not formal
mortgages, and not entitled, strictly speaking, to be so styled,
yet, for convenience, will be so designated.

The testimony was taken and reported to the court by the
master, and is all set out in the "Case," but as we do not under-
stand that the exceptions of appellant raise any question of fact,
no statement of the testimony is necessary.   It will be sufficient
to say that while there was some conflict in the testimony as to

whether the attorney of L. D. Mowry had any actual notice of the Jones mortgage (there being no pretence that Mowry himself had any such notice) before the Mowry mortgage was taken, there does not seem to be any dispute as to the fact that such attorney had seen the record of the Jones mortgage on the books of the office of register of mesne conveyances. There was also some conflict of testimony as to whether Jefferies had notice of the Jones mortgage at the time he took his mortgage of the 19th of May, 1881, but he admits in his testimony he learned of it between that date and the 24th of August, 1881, when he had his mortgage recorded, and that information was what induced him to put his mortgage on record. There was no testimony, however, that any of the other parties had any notice of any kind of the alleged lost note, constituting a lien, in favor of Jefferies, to renew which the paper of 19th of May. 1881, copied above, was claimed to have been given, until after that paper was recorded on the 24th of August, 1881.

The Circuit Judge found, as matter of fact, "that Mowry did not have actual notice of the existence of Jones's mortgage, or rather, of this paper. But if Mowry had actual notice of the paper, nevertheless his mortgage will have priority." He further found that neither Mowry nor Jones had any notice of the Jefferies mortgage, which was taken and recorded subsequent to theirs, and he held that both the Mowry mortgage and the Jones mortgage had priority over that of Jefferies. He therefore rendered judgment that the proceeds of the sale of the mortgaged premises be applied first to the Mowry mortgage, and if there be any remainder after such application, then to the Jones mortgage and next to the Jefferies mortgage.

From this judgment the defendant Jefferies alone appeals upon the following grounds: 1. "For that his honor erred in finding that the Mowry mortgage had priority over the Jefferies mortgage. 2. For that his honor erred in finding that the Jones mortgage had priority over the Jefferies mortgage. [The third and fourth grounds raise the same questions in different forms.] 5. For that his honor erred in rendering judgment against Jefferies for costs, and especially for costs accrued after the sale."

It is perfectly clear that as between the Mowry mortgage and

the Jefferies mortgage the former would be entitled to preference, for it was first taken and was duly recorded before the Jefferies mortgage, and there is no evidence whatever that Mowry, at the time he took his mortgage, had any notice of any kind of the alleged lost note claimed to constitute a lien in favor of Jefferies, arising as far back as 1875, according to the terms of the paper, of 1873 according to the testimony. So that there can be no doubt that as between these two papers, standing alone, Mowry would have priority. The appellant, however, claims to work out priority for Jefferies this way : that Mowry having had actual notice of the Jones mortgage, the latter thereby acquired priority over the former; and that the Jefferies mortgage having been duly recorded before the Jones mortgage was legally recorded, it thereby acquired priority over the Jones mortgage, and as a consequence over the Mowry mortgage, which had become subject to the Jones mortgage by reason of the fact that Mowry had actual notice of it.

There are several objections fatal to this view. 1st. The Circuit Judge has found as matter of fact that Mowry did not have actual notice of the Jones mortgage, and there is no exception to this finding of fact; and more than this, Jones having abandoned his appeal, has acquiesced in the judgment ascertaining this fact, and subordinating his lien to that of Mowry. 2nd. The Circuit Judge has, in effect, found as matter of fact that Jefferies had notice of the Jones mortgage when he took his lien of the 19th of May, 1881. 3rd. Even if Jefferies did not have such notice, yet his mortgage not having been recorded within forty days— the time prescribed by law for that purpose—it could only take effect as a lien against subsequent creditors from the date of its recording, 24th August, 1881 (Gen. Stat., § 1776 ; *King* v. *Fraser*, 23 S. C., 543), and he admits in his testimony that he had notice of the Jones mortgage before that date, and that such notice was what prompted him to put his mortgage on record. Now, as both Mowry and Jones were subsequent creditors of Crocker, the debt of the former having arisen in 1880 and the latter in 1877, and the debt of Jefferies having arisen at least as far back as 1875, if not 1873, it is quite clear, under the authorities just cited, that the lien acquired by Jefferies, under the

paper set up by him as such, could acquire no validity as against such creditors until it was recorded—24th August, 1881—and as he himself admits that he then had actual notice of the Jones mortgage, and constructive notice, arising from the record, of the Mowry mortgage, his lien must be regarded as subordinate to both of those mortgages.   As is said by Mr. Justice McGowan, in *King* v. *Fraser*, *supra*, in speaking of the effect of the provision in section 1776, giving to a mortgage recorded after the expiration of the time allowed for that purpose, a lien from the date at which it is recorded: "So far as other creditors are concerned, it would seem to be the same in effect as the giving a new mortgage or changing the date of the old one on [to] that day."   This being so, the present case may be considered as if Jefferies had taken his mortgage on the 24th of August, 1881, and as he then unquestionably had notice both of the Jones and the Mowry mortgages, his lien would undoubtedly be subordinate to theirs.

This view is absolutely conclusive, for even if it could be held, as contended for by appellant, that Mowry had actual notice of the Jones mortgage by reason of the undisputed fact that his attorney saw it spread upon the records, and that the judge erred in holding as matter of law otherwise, yet while this might benefit Jones, if he were in a position to claim such benefit, we do not see how it would avail Jefferies, who, as we have seen, never acquired any lien as against either Jones or Mowry, subsequent creditors, until the 24th of August, 1881, when Jefferies had notice both of the Jones and the Mowry mortgages.

We do not, however, wish to be understood as deciding that the fact that a mortgagee has seen upon the records an informal and defective paper, which at most amounts only to an equitable mortgage, and which was improperly recorded, is sufficient to affect him with actual notice.   Upon that question there seems to be a conflict of authority, and as it does not, under the view which we take of this case, properly arise, we do not propose to decide it now.

It seems to us, therefore, that there was no error on the part of the Circuit Judge in holding that the plaintiffs were entitled to priority over appellant.

The fifth ground, in relation to costs, cannot be sustained, under the well settled rule that in cases of this kind, questions of costs are matters addressed to the discretion of the Circuit Court, with which this court rarely interferes; and in this case we see no ground for interfering.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.