The main action is for the foreclosure of a mortgage given by Bradford Keel, S.A. Keel, and W.H. Keel, to the Bank of Western Carolina, to secure the payment of their note for $15,000, dated January 21, 1920. The mortgage covered a tract of 400 acres which had belonged to C.A. Keel, the grandfather of Bradford Keel and the father of the other two mortgagors; it was recorded February 21, 1920, and later was assigned to the plaintiff Mary A. Swygert. The mortgaged premises had been purchased by the three mortgagors at a private sale by the executor of C.A. Keel for partition, and the mortgage to the bank had been given to raise the necessary funds to settle with the other heirs at law of C.A. Keel. The action resulted in a decree of foreclosure and sale. The sale was had and the plaintiff became the purchaser at $6,020. The decree provided that $1,000 of the proceeds should be held by the master to abide the result of controversy between the plaintiff and the appellant J.C. Johnson, which will be explained.
The controversy now before the Court is subsidiary to the main action for foreclosure, as to the decree in which there is no contest; it is between the plaintiff Mrs. Swygert, assignee of the bank mortgage, and the appellant J.C. Johnson, the assignee of a mortgage given by Bradford Keel, to one Livingston, upon his undivided interest in certain land which passed to him under the will of his grandfather, C. A. Keel; each claiming the fund of $1,000 reserved as stated. *Page 292 
A detailed statement of the facts appears to be necessary. The land covered by the bank mortgage formerly belonged to C.A. Keel, the grandfather of Bradford Keel and the father of the other two mortgagors, S.A. Keel and W.H. Keel. He died in 1892, leaving a will appointing his son, J.H. Keel, executor, in which the land, about 400 acres, was devised to his wife for life or widowhood. The will made provision for the contingency of the remarriage of the widow, which did not occur and may be passed over. The disposition of the property upon the death of the widow is thus provided for:
"Item 4th. At the death of my beloved wife I will that there be an equal division of what may be left of my estate after supporting my wife and children, among my beloved children, viz., J.H. Keel, Hattie Bates, P.H. Keel, E.F. Keel, W.H. Keel, E.M. Keel, and S.A. Keel, except Hatties Bates. She has had 41 acres of land of about equal value of my other land, and will not get any more until the other heirs get that much in value, then she is to have an equal share with the others.
"Item 5th. If any of the above named children die before a division of my estate is made and leave a bodily heir, then that heir or heirs as the case may be, will have their parent's part of my estate."
The widow died in 1919, and at that time the heirs at law of C.A. Keel were: (1) J.H. Keel, a son of the testator. (2) Ethel Tinsley, Pearl Bates and Jane Bates, children of Hattie Bates, a deceased daughter of testator. (3) Bradford Keel, a son of P.H. Keel, a deceased son of testator. (4) Mrs. W.D. Nelson, a daughter of the testator. (5) W.H. Keel, a son of the testator. (6) Myrtle Keel and Irene Keel, daughters of E.M. Keel, a deceased son of testator. (7) S.A. Keel, a son of testator.
(Note. — I assume that Mrs. W.D. Nelson is the same person named in the will as E.F. Keel.) *Page 293 
In September, 1919, J.H. Keel as executor of the will of C.A. Keel, and in his own right brought an action against the other heirs at law named above, for partition, declaring that the interest of the parties would be best subserved by a sale in bulk of the premises by public or private sale. During the pendency of this partition proceeding, on October 22, 1919, Bradford Keel, one of the defendants, a son of P.H. Keel, a deceased son of the testator, as stated above, gave a mortgage to one Livingston, upon "my undivided right, title, interest and estate in and to that certain piece, parcel or tract of land" (describing the 400-acre tract referred to), to secure a note for $750. The mortgage was recorded on January 22, 1920, when the note and mortgage were assigned to the appellant, J.C. Johnson, on July 1, 1922. Livingston was not made a party to the partition proceeding; in fact it was instituted before the Bradford Keel mortgage was executed. Livingston made no effort to become a party, and no effort was made to have him made a party, by the plaintiff or other parties to the suit. Notice oflis pendens was not filed in connection with the partition proceeding.
On November 20, 1919, two months before the Bradford Keel mortgage to Livingston was recorded, his Honor, Judge Wilson, signed an order as follows:
"Ordered, that the plaintiff executor, J.H. Keel, be, and he is hereby, authorized and directed to sell the premises described in the complaint at public or private sale in his discretion, for the sum of not less than twenty thousand dollars; provided, that in the event the said executor cannot sell the said property at private sale for the sum of twenty thousand dollars, then the said executor is hereby authorized and directed to sell the said premises at public outcry in front of the court house door at Aiken, S.C. after three weeks' advertisement in a newspaper published and in general circulation in the County of Aiken. *Page 294 
"Ordered, further, that the proceeds of the said sale be held by the said executor for distribution under the order of this Court, and the within cause is hereby referred to the Master of Aiken County to take the testimony and report the same, together with his conclusions of law and fact, to this Court with all convenient speed."
The Master held a reference on January 14, 1920, and took the testimony. At this reference the executor testified:
"We offered it in parcels and we offered it as a whole at auction, reserving the right to sell it at private sale if the land did not bring a satisfactory price. The bids at auction were less than thirty thousand dollars so I sold it at private sale for thirty thousand dollars to the parties above named, to wit: S.A. Keel, W.H. Keel and Bradford Keel."
The Master reported:
"The executor, J.H. Keel, in accordance with the order of this Court above referred to, has sold the real estate described in the complaint for the sum of thirty thousand ($30,000.00) dollars at private sale."
In reference to the provisions in Item 4 of the will, affecting the interest of the children of Hattie Bates, deceased daughter, the Master reported:
"I find that the agreed acreage is four hundred acres, that the same was sold for seventy-five ($75.00) dollars per acre. I find that the valuation of the forty-one acres received by Mrs. Hattie Bates was by intention of the testator fixed in the will as of equal value with his remaining lands, and that it was his intention that in deducting this amount from the legacy of Mrs. Hattie Bates, the lands should all be considered as of equal value. It, therefore, follows that Mrs. Hattie Bates must be held to have received forty-one acres of the value of seventy-five ($75.00) dollars per acre, which amounts to three thousand and seventy-five ($3,075.00) dollars"; and that "six interests must, therefore, receive three thousand and seventy-five dollars *Page 295 
each, before the children of Mrs. Hattie Bates, deceased, can share in the division of the proceeds of sale."
He accordingly recommended that the expenses of the sale paid by the executor, amounting to $117.50, should be first paid out of the $30,000.00 purchase money; that the executor should be allowed 2 1/2 per cent. on receipts and the same on disbursements — amounting (my calculation) to $1,481.25 — and that the attorney should receive a fee of $1,250.00 — total disbursements $2,848.75 — leaving for distribution $27,151.25.
As the children of Mrs. Bates were chargeable with $3,075.00, each of the other heads of families should first receive the same amount, $3,075.00. There were six of them, so that six times $3,075.00, $18,450.00, should be deducted from the amount for distribution $27,151.25, leaving $8,701.25 for distribution among all seven, giving to each $1,243.35.
Bradford Keel, with each of the other heads of families, except the Bates family, became entitled to $3,075.00 plus $1,243.03 — $4,318.03; the Bates family to $1,243.03. For these several distributive shares Bradford Keel, S.A. Keel, and W.H. Keel, purchasers of the land at private sale, became responsible.
On January 14, 1920, eight days before the Bradford Keel mortgage to Livingston was recorded, the executor, J.H. Keel, executed and delivered to Bradford Keel, S.A. Keel, and W.H. Keel, a deed conveying the 400-acre tract to them. It was recorded on February 17, 1920. The deed recites that it is made "in consideration of $30,000.00 to me in hand paid by W.H. Keel, S.A. Keel and Bradford Keel." The deed further recites that it is made in accordance with an order of Court In Re. C.A. Keel v. S.A. Keelet al.
Evidently, in conformity with the usual custom under such circumstances, the executor charged himself with the full $30,000.00; credited himself with the approved disbursements *Page 296 
above referred to, of $2,848.75, and with the shares of the purchasers, $4,318.03 each; and paid out of the money supplied by them the shares of the other four.
On February 3, 1920, his Honor, Judge Bowman, signed an order confirming the Master's report and confirming the private sale made by the executors to Bradford Keel, S.A. Keel, and W.H. Keel, and the distribution of the proceeds of sale in conformity with the recommendations of the Master.
In order to pay off the other four heads of families and the approved disbursements, which amounted to:

Approved disbursements ...................... $ 2,848.75
Share of J.H. Keel .......................... 4,318.03
Share of Mrs. Nelson ........................ 4,318.03
Shares of E.M. Keel's children .............. 4,318.03
Share of Mrs. Bates' children ............... 1,243.03
 _____________
 Total ................................... $ 17,045.87

— the purchasers borrowed from the Bank of Western Carolina (supplemented, I assume, with cash otherwise obtained or had) $15,000.00, upon their note secured by a mortgage upon the 400 acres.
This stipulation appears in the transcript:
"It is stipulated that it stands as admitted that the $15,000.00 borrowed from Bank of Western Carolina, and secured by the mortgage which was later assigned to plaintiff, was borrowed by S.A., W.H. and Bradford Keel for the purpose of paying the same to J.H. Keel as executor as the purchase money of the 400 acres conveyed by him to said purchasers and that the deeding of said property by J.H. Keel, executor, to S.A., W.H. and Bradford Keel, and their mortgaging same to the Bank for $15,000.00, and the payment of the said sum directly by the Bank to the executor, were all part and parcel of the same transaction."
Now recurring, after this perhaps tedious recital, to the immediate controversy in connection with the bank mortgage *Page 297 
and the mortgage which Bradford Keel gave to Livingston, later assigned to the appellant, Johnson, in 1922.
At some time in 1922, the exact date does not appear in the transcript, Mrs. Swygert instituted this action to foreclose the bank mortgage of $15,000.00, which had been assigned to her. Neither Livingston nor Johnson, the mortgagee and the assignee of the $750.00 mortgage given by Bradford Keel to Livingston upon his undivided interest in the land, were made parties originally. The appellant, Johnson, however, pending the action, made application to become a party so that he could set up his rights in the Livingston mortgage; his application was granted. His answer, if he filed one, does not appear in the transcript. I assume that his contention sufficiently appears from the following statement which appears in the transcript:
"The foreclosure proceeded to termination upon an agreement between the attorneys for the respective parties that $1,000.00 should be held by the Master until the decision of the Johnson-Swygert issues. The land was sold for $6,200.00 and bought in by the plaintiff. Plaintiff's judgment amounted to more than $20,000.00.
"The issue presented herein to the Court is as to the disposal of the said fund of $1,000.00, which depends upon the determination of the question whose rights are paramount, viz., those of J.C. Johnson, the claimant, or of Mrs. M.A. Swygert."
As his Honor, the Special Judge, observes:
"Johnson, the claimant, claims to have a mortgage prior in rank to the plaintiff's mortgage, covering one-sixth interest in the property" (in reality, a little less than one-sixth; the distributable amount was $27,151.25; Bradford Keel's share was $3,075.00 plus $1,243.03 — $4,318.03; one-sixth of $27,151.25 would be $4,525.20).
In other words, Johnson claims that the lien of his mortgage upon the undivided interest of Bradford Keel, in the land, has been transferred to the interest of Bradford Keel *Page 298 
in the proceeds of sale; a contention which I think is entirely correct; but it amounts to a concession that the sale constituted an extinguishment of the lien of the mortgage upon the land, transferring it to the proceeds of sale, to which alone Johnson had recourse, the purchasers acquiring a clear title.
It should be stated that both Livingston and Johnson (who had not at that time acquired the Bradford Keel mortgage to Livingston) were present at the public sale by the executor, and, of course, knew of the partition suit. Livingston had made financial arrangements with the bank to purchase the property if it did not bring more than $20,000.00; at the sale he gave notice of the Bradford Keel mortgage which he then held and was told by W.H. Keel who was managing the sale:
"I don't care, we are going to sell the property and he (Bradford Keel) can settle up. * * * I asked Mr. Keel about it; I asked him about my money, and he said they were going to sell the property and he (Bradford) would pay it."
It should also be stated that Dibble, president of the bank, was notified before the $15,000.00 loan was made that Livingston held the Bradford Keel mortgage.
The property, as stated, brought at the foreclosure sale only $6,020.00, being bid in by Mrs. Swygert. Under the decree of foreclosure $1,000.00 was ordered held by the Master until the controversy between Mrs. Swygert and Johnson, as to priority of their claims thereto, should be determined. It will be observed, in passing, that this $1,000.00 is no part of the interest of Bradford Keel in the proceeds of the sale in partition, but is a part of the proceeds of the sale in foreclosure, supplied by Mrs. Swygert, assignee of the bank mortgage.
The matter was referred to the Master, who took the testimony. The transcript does not contain a report from the Master, and from that fact I assume that the reference was for the purpose only of taking the testimony. *Page 299 
The matter then came on for hearing, at a time not stated, before Hon. J.E. Harley, a Special Judge, at Aiken. On September 24, 1924, he filed an elaborate decree in favor of Mrs. Swygert, from which J.C. Johnson has appealed.
I think that the decree should be affirmed for the following reasons:
It is by no means certain that under the will Bradford Keel was vested with such a legal title as would support a mortgage, as will be hereinafter discussed; but, assuming for the present that he was a tenant in common of the land, I think that the law is well settled that where the interest of a tenant in common is subject to the lien of a judgment ora mortgage, the right of partition is paramount; that the incumbrance upon the tenant in common's interest is extinguished by the partition and the lien is transferred to the allotment of the tenant in common, whether it accrues by partition in kind or by sale.
Judge Freeman, in his work on Cotenancy and Partition (Edition of 1874), at page 582, § 478, and following, has an exceedingly clear exposition of the subject in review. He declares that:
"When a partition is made, the interest of a lienholder (a general term, I interpolate, not limited to judgments) like the inchoate right of a wife to dower is removed from the undivided moiety of the whole, and attached to the whole of the purparty assigned to the tenant in common against whose moiety the lien was a charge. * * * An incumbrancer (likewise a general term), unless the statute so directs, therefore, is not a necessary party defendant, because no relief can be decreed against him."
In Section 479 it is said:
"When the subject-matter of a suit for partition is divided among the various cotenants thereof (I interpolate, a partition in kind), the interests of each lienholder are sufficiently protected, because by operation of law, his lien is attached to the whole of the property assigned to the tenant *Page 300 
against whose moiety it was charged. * * * Even where a sale is sought, lienholders are not, in the absence of statutory provisions to the contrary, necessary parties defendant; because they cannot be affected by such sale. * * * When a lien (of any kind) became attached to the interest of one of the cotenants pendente lite, the purchaser took the permises discharged of the lien; and the lien became a charge on the cotenants' share of the proceeds of the sale."
This does not mean, as Judge Freeman distinctly recognizes, that the interest of a lienee, holding a lien upon the undivided interest of a tenant in common, is at the mercy of the tenants in common, beyond the protection of the Court. While not a necessary party to the partition suit, he is a proper party, and may be made so by the plaintiff: or the Court of its own motion may so require; or upon the application of the lienee, he may intervene for the protection of his lien; or even if not a party, and the proceedings have eventuated in either a partition in kind or in a sale, he may come in to show that the partition has been unfairly or collusively conducted. As is said in Section 478:
"But we understood that a judgment in partition, or even a voluntary partition, is so far binding upon mortgagees and other incumbrancers as to cast upon them the onus of showing that the allotments thereby made were unequal; and that until such a showing is made the partition cannot be disturbed. To permit a mortgagee or other incumbrancer, either before foreclosure or afterwards, to wantonly assail and destroy a prior partition, and to disturb possession taken and held thereunder, would certainly be a maladministration of the law. But if such mortgagee has a right to partition which cannot be denied without disregarding any well-established rule of law, Courts may still prevent a malicious and inequitable exercise of that right by allotting to him the purparty already set off to his mortgagor in all cases where the previous allotment has not (?) been unjust. * * * If no means were provided by which the existence of liens against *Page 301 
a cotenant's moiety could be brought to the attention of the Court great injustice would be done."
It is conceivable that by partition in kind, either voluntary or by order of Court, the interest of the mortgagor cotenant, might, by collusion, be allotted in a portion of grossly inadequate value compared with the portions allotted to the other cotenants, to the great prejudice of his mortgagee. I apprehend that the Court would not hesitate to give the mortgagee relief by ordering a new allotment. Or in the event of a sale, like collusion might result in the sacrifice of the property at a grossly inadequate price. A limitation of the mortgagee to his lien in the one case upon the allotted portion, and in the other to the share of the mortgagor, would not be countenanced.
The mortgagee had every means at hand to protect his interest. Livingston, under whom Johnson claims, was present at the sale, as has been shown; he was necessarily informed of the partition proceedings; he could have intervened and obtained an order requiring the executor to pay his mortgage out of the interest of Bradford Keel; he did not do so; he gave notice of his mortgage at the sale, and apparently relied upon W.H. Keel's assurance that Bradford would pay it out of the proceeds of sale; he stood by and allowed the executor, in crediting Bradford Keel with his interest, practically to allow him to receive the whole of it, $4,300.00; he makes no complaint of the price at which the property sold at private sale, or of the regularity of that proceeding; in fact he confirms it by his application here. Should the purchaser at the foreclosure sale not be protected against the consequence of such negligence? She stands in the position of an outside purchaser whose title unquestionably would be protected against the claim of Johnson; the fact that she was the assignee of the bank mortgage does not alter her position.
I think that the authorities are overwhelmingly in support of the proposition above announced. *Page 302 
"The existence of an incumbrance against the moiety of a cotenant does not affect the right to partition. Theoretically a mortgagee or other incumbrancer has no interest in the partition, because his incumbrance on partition fastens upon the allotment of his mortgagor, hence very many decisions maintaining that the lienholder need not be made a party to a suit for partition." 30 Cyc., 208.
"In a suit for partition, it is not necessary, under the statute requiring the titles of the parties to be ascertained, that incumbrancers upon the separate shares of the parties, should be joined as parties." Sebring v. Mesereau, 9 Cow. (N.Y.), 344.
"A mortgagee of an interest in an undivided estate is not entitled to be made a party to a proceeding in partition, and cannot do any act affecting the title or estate of his mortgagor."Appeal of Long, 77 Pa., 151.
"Nor does the fact that there are attachments upon the shares of some of the petitioners in suits now pending affect the rights of the petitioners to a partition." McCartyv. Patterson, 186 Mass. 1, 71 N.E., 112.
"Partition does not affect mortgagees and judgment creditors, and some of the authorities go so far as to say that when they are made parties to a suit for that purpose, and in the capacity of mortgagees or creditors, the bill will be dismissed as to them. 4 Minor, Inst., p. 1213; Bart., Ch. Prac., 290." Martin v. Martin, 95 Va., 26, 27 S.E., 810.
"But it is held generally by the Courts that partition never affects the interest of third persons, and that creditors have no concern with it, and that, if they are made parties to the suit, it will be dismissed as to them. Stevens v. McCormick
[90 Va., 735], 19 S.E., 742; 2 Rob. Pr. (old), 14;Wotten v. Copeland, 7 Johns. Ch. [N.Y.], 140; Agar v.Fairfax, 17 Ves., 533; 2 Jones, Real Prop., § 1996; Espallav. Touart [96 Ala., 137], 11 So., 219; Shivers v. Hand
[50 N.J. Eq., 231], 24 A., 911; 17 Am. Eng. Enc. Law, 783; 15 Enc. Pl. Prac., 796. But actual partition does *Page 303 
not disturb the liens of creditors. Upon actual partition the lien of a creditor upon an undivided interest is transferred by the partition from the undivided portion of the whole premises to the whole of the part set off to the tenant against whose portion the lien was charged. 17 Am. Eng. Enc. Law, 783; Wright v. Strother, 76 Va., 857; 2 Jones, Real Prop., § 1996." Childers v. Loudin, 51 W. Va., 559,42 S.E., 637.
"When the property is partitioned by a proper decree of the Court, the mortgage attaches as a lien upon that portion set off to the mortgagor and his grantees, and the owner or owners of the other portion of the land take it divested of the mortgage lien." Jolliffe v. Maxwell 3 Neb. Unof., 244; 91 N.W., 563.
"Such lien creditors, if any exist, were not parties to this suit, nor were they necessary parties. When the sale is made and the share ascertained, any creditor having a claim against one of the tenants in common can intervene, and ask that the money allotted to his debtor be subjected to his claim."East Coast Cedar Co. v. Bank (C.C.A.), 111 F., 446 (Simonton, Judge).
"A mortgagee of an undivided interest in a parcel of land is not entitled to be made a party to partition proceedings. His lien extends to the owelty which takes the place of his debtor's interest, when the debtor's share of the land is set off to another of the cotenants subject to owelty of partition."Stewart v. Bank, 101 Pa., 342.
"Mortgagees of the interest of a tenant in common, pending a proceeding for partition, are limited to the portion set off to their mortgagor, though they are not parties to the decree." Loomis v. Riley, 24 111., 307.
"Where pending proceedings for partition, a tenant in common mortgages his undivided share in the premises and there is an actual partition in the land, the mortgage will attach to the portion set off to the mortgagor." Westerveltv. Haff, 2 Sandf. Ch. (N.Y.), 98. *Page 304 
The case of Westervelt v. Haff, 2 Sandf. Ch. (N.Y.), 98, is strikingly parallel with the situation which confronts the Court in the case at bar. The defendant, Haff, was entitled as an heir at law to one-ninth undivided interest in five houses and lots in the City of New York; prior to September, 1841, a partition suit had been instituted by and between the defendant, Haff, and the other tenants in common; while that suit was pending, in September, 1841, the defendant, Haff, gave the plaintiff, Westervelt, a mortgage upon his undivided interest; Westervelt, the mortgagee of Haff, was not at that time or thereafter made a party to the partition suit, though notice of lis pendens had been filed and Westervelt had actual notice of the pendency of the suit; the partition suit proceeded to a decree for the sale of the whole five lots, entered in October, 1841; the sale was had in November, 1841, at which the defendant, Haff, became the purchaser of two of the lots at $4,975.00. The interest of Haff in the net proceeds of the sale amounted to $1,574.44, which he was entitled to use in complying with his bid, leaving a balance due by him of $3,401.44 to the other heirs; this balance he provided for by mortgaging one of the lots purchased by him to the Clerk of Court, for certain infant heirs, for $1,901.44, and to another of the heirs, one Speck, for $1,500.00, and received from the Master who made the sale under the decree a conveyance of the two lots; thereafter the defendant, Haff, mortgaged both lots to his mother to secure an antecedent debt; the plaintiff, Westervelt, mortgagee of Haff's undivided interest, did not present his mortgage to the Master after the sale or make any claim upon the fund until after the Master had closed the sale and made his report.
The mortgagee, Westervelt, then brought suit to foreclose the mortgage which Haff had given to him upon his undivided interest, contending that by force of the sale and purchase of the two lots, his mortgage continued to be a lien and was prior on both lots to Mrs. Haff's mortgage and that *Page 305 
she had actual notice of his lien; he admitted that the mortgages to Speck and the Clerk of Court were prior in right to his own, being in effect given for the purchase money protanto.
"A judgment against a tenant in common does not prevent partition. The tenant against whom the judgment is, or any other of the tenants in common, may sue out a writ of partition, and proceed to have the share of each set out in severalty. The judgment in such case binds the part set out for one against whom it is entered, and it binds no more. So, also, in case of a mortgage on an undivided share:Jackson v. Pierce, 10 Johns. [N.Y.], 414, 417." Bavingtonv. Clarke, 2 Pen. W. (Pa.), 115, 21 Am. Dec., 432.
The effect of partition upon the lien of a cotenant against one of the cotenants has frequently been discussed by this Court. It has been invariably held, as expressed by that master mind, Chief Justice McIver, in the case of Holley v.Glover, 36 S.C. 404, 15 S.E., 605, 16 L.R.A., 776, 31 Am. St. Rep., 883.
"The rule is well settled that while a judgment against one of several tenants in common is a lien upon the undivided interest of such tenant in common, under which such undivided interest may be levied on and sold, yet such incumbrance is subordinate to the paramount right of the other tenants in common to demand partition, and if a sale of the undivided property is made for that purpose, the purchaser takes his title freed and discharged from such subordinate incumbrance on the share of the judgment debtor, and the creditor is remitted to his debtor's share of the proceeds of the sale, even though the judgment creditor is not a party to the proceedings for partition." Rabb v. Aiken, 2 McCord Eq., 118; Keckeley v. Moore, 2 Strob. Eq., 21; Johnsonv. Payne, 1 Hill, Law, 111; McQueen v. Fletcher, 4 Rich. Eq., 152; Burris v. Gooch, 5 Rich., 1; Garvin v. Garvin,1 S.C. 62; Riley v. Gaines, 14 S.C. 454; Ketchin v.Patrick, 32 S.C. 443, 11 S.E., 301; Marion County Lumber *Page 306 Co. v. Lumber Co., 84 S.C. 505, 66 S.E., 124, 877;DeSaussure v. Bollmann, 7 S.C. 329; Ex parte UnionMfg. Co., 81 S.C. 265, 62 S.E., 259, 128 Am. St. Rep., 908.
All of which are cited and quoted from in the decree of his Honor, the Special Judge.
In addition to these authorities, the following South Carolina decisions also sustain the proposition:
In Stern v. Epstin, 14 Rich. Eq., 5, it is said:
"A prior judgment, without sale thereunder, might not in this case, perhaps, any more than in cases of the partition of intestate's estates, affect the title of a purchaser, at the sale for partition" — citing Keckeley v. Moore and Burris v.Gooch.
In Pendergrass v. Pendergrass, 26 S.C. 19, 1 S.E., 45, the Court said:
"While it is true that a distributee has (subject to the payment of all debts of the intestate) legal title to his share of land descended, which may be bound by the lien of a judgment and sold under execution, yet that title is qualified and limited by the right of the codistributees to have partition of the property. If the judgment is not enforced by a sale before partition, the lien is dissolved, and in the proceeding to partition judgment creditors of distributees need not be made parties, but they may apply to have their respective rights in the proceeds."
In Garvin v. Garvin, 1 S.C. 55, the Court said:
"The sale of the real estate merely transferred the legal liens affecting it, and did not change their relative priorities. In equity, the fund arising from the sale stands in lieu of the land itself, and all liens on the land attach to the fund and are enforced with due regard to all the legal priorities."
In Shaw v. Barksdale, 25 S.C. 204, his Honor, Circuit Judge Fraser, whose decree was affirmed, stated:
"In actions for partition judgment creditors of the several tenants in common are not necessary parties, and the *Page 307 
purchaser of the land sold under proceedings for partition takes title free from any lien or incumbrance created by such judgment" — citing Simmons v. Simmons, Harp. Eq., 256, and other South Carolina cases.
In Barron v. English, 128 S.C. 332, 121 S.E., 782, it is said:
"The legal estate owned by a tenant in common in real estate is subject to levy and sale, provided the limitations of the homestead law and the right of partition are not invaded."
It is held in the cases above cited that the lien creditor of the tenant in common is not a necessary party to the partition suit, a conclusion that naturally follows from the principle that his lien is subordinate to the right of partition; for why make him a party to a proceeding which he cannot obstruct? His remedy is to petition in that cause for the application of his debtor's interest to his lien.
In Ex parte Crawford, 27 S.C. 159, 3 S.E., 75, the Court said:
"It is true that this lien, if not enforced before partition, would not have been allowed to interfere with the rights of the parties to partition and divide the same among themselves. But by timely application to the Court, the judgment or record creditors could have had their liens protected by an order for the payment to them of the defendant's share of the price of the lands divided or sold for division."
It has been suggested that these South Carolina cases involve the application of the principle to judgments and not to mortgages. This is true; but while there is a distinction in the characteristics of the two liens, one being general and the other specific, it is difficult to perceive how the distinction can make a difference in the application of the principle which is derived, not from the characteristics of the liens,but from the incidents of the right of partition.
That this is true I think is abundantly shown by the decided cases. *Page 308 
In Keckeley v. Moore, 2 Strob. Eq., 21, the Court said:
"If a sale for partition be ordered, the title of the purchaser is just as complete as if the land had been sold to satisfy a debt of the intestate. To require the judgment or other lien creditors of all the distributees to be made parties to a suit for the partition of the estate of an intestate, would introduce a novelty in the practice of the Court, and would incumber the proceedings with a delay and expense not calculated to promote the final settlement and adjustment of estates. * * *"
In Stern v. Epstin, 14 Rich. Eq., 5, it was held perhapsobiter:
"But a sale, by either Philip Epstin [the tenant in common] or the Sheriff, post litem motam, could not have affected the partition."
In Burris v. Gooch, 5 Rich. 1, the Court said:
"If the judgment is not enforced by a sale of the defendant's distributive share, before partition, the lien is divested. The purchaser, or distributee in whom the land becomes vested, under a judgment for partition, takes it discharged of the lien of the judgment."
In Burris v. Gooch, 5 Rich., after holding that a sale in partition divests the lien of a judgment against one of the tenants in common, the Court adds:
"The judgment creditor may, by timely application to the Court, have his lien protected by an order for the payment to him of the defendant's distributive share of the price of the land."
In Garvin v. Garvin, 1 S.C. 55, the Court held that the remedy of either a judgment or a mortgage creditor, who claimed a lien upon the undivided interest of a tenant in common was to file a petition in the partition suit for the protection of his lien, which he could not do at any time before the actual partition or sale or at any time after sale and before distribution of the proceeds. *Page 309 
In Riley v. Gaines, 14 S.C. 454, the Court said:
"Thus, while it is true that the judgment of the appellant was a lien upon the undivided interest of Marshall B. Gaines in the real estate of his deceased father, yet that lien was subordinate to the right of the other heirs to have partition made; and if, upon such partition, the whole of the land had been sold, or if it had been assigned to one or more of the other heirs, the lien of the judgment upon the land would have been divested and transferred to the interest of Marshall B. Gaines in the proceeds of the sale, or in the amount which those to whom the land had been assigned were decreed to pay for equality of partition."
In Pendergrass v. Pendergrass, 26 S.C. 19, 1 S.E., 45, the Court said:
"While it is true that a distributee has (subject to the payment of all debts of the intestate) legal title to his share of land descended, which may be bound by the lien of a judgment and sold under execution, yet that title is qualified and limited by the right of the codistributees to have partition of the property. If the judgment is not enforced by a sale before partition, the lien is dissolved, and in the proceeding to partition judgment creditors of distributees need not be made parties, but they may apply to have their respective rights in the proceeds."
"Every kind of interest in real estate may be mortgaged, if it be subject to sale and assignment." 1 Jones, Mtg. (6th Ed.), § 136.
In Ketchin v. Patrick, 32 S.C. 443, 11 S.E., 301, the Court said:
"It is also well settled that while a judgment against one of several tenants in common in a tract of land, is a lien on the undivided interest of the judgment debtor, which may be enforced by a sale of such undivided interest, the effect of which is to put the purchaser in the position of assignee of such interest; yet the lien of the judgment is subordinate to the right of the other tenants in common to demand *Page 310 
partition, which when made, transfers the lien to the share of the judgment debtor, when ascertained by a partition in kind, or to his share of the proceeds of the sale, when a sale is ordered for partition; and this is so, whether the judgment creditor is a party to the proceedings for partition or not."
The case of Holley v. Glover, 36 S.C. 404, 15 S.E., 605, 16 L.R.A., 776, 31 Am. St. Rep., 883, is an exceedingly instructive one. The widow of Alfred Holley brought 16 separate suits for dower against as many purchasers of subdivisions of a tract which belonged to Alfred Holley and another, Carey, as tenants in common and which had been sold under order of Court in a partition proceeding instituted by the heirs at law of Carey against Alfred Holley. The defendant in the title of the cause above stated, Mrs. Glover, and the other fifteen defendants claimed title under John Holley, the purchaser of the land at the partition sale. The sale was had during the lifetime of Alfred Holley when Mrs. Holley's interest was an inchoate right of dower. She was not made a party to the partition proceeding and contended that she was not bound by it.
In an opinion by Chief Justice McIver, the Court held:
"* * * While the wife of one of several tenants in common has an inchoate right of dower in her husband's portion of the real estate held in common, yet such right is subordinate to the paramount right of the other tenants in common to have partition of the common property in any of the modes by which such partition may be lawfully made. Hence if a sale for partition becomes necessary, the wife's inchoate right of dower in the land is barred, even though she is not a party to the proceedings for partition; and the purchaser at such sale takes his title disincumbered of such subordinate right of dower."
The Court continues:
"Again, the rule is well settled that while a judgment against one of several tenants in common is a lien upon the *Page 311 
undivided interest of such tenant in common, under which such undivided interest may be levied on and sold, yet such incumbrance is subordinate to the paramount right of the other tenants in common to demand partition, and if a sale of the undivided property is made for that purpose, the purchaser takes his title freed and discharged from such subordinate incumbrance on the share of the judgment debtor, and the creditor is remitted to his debtor's share of the proceeds of the sale, even though the judgment creditor is not a party to the proceedings for partition."
The right of the demandant to dower is specifically denied upon the existence of the paramount right of partition, as the following extract from the opinion clearly demonstrates (referring to the cases of Keckeley v. Moore and others cited):
"Now, while these are cases of liens or charges upon the common property, or rather upon the interests of one or more of the tenants in common, and while the inchoate right of dower may not, properly speaking, be a lien, yet the principle upon which they rest is applicable here, to wit, that the enforcement of a paramount right must not be interfered with or abridged by persons holding subordinate rights,whatever be their character. Hence, as the inchoate right of dower arises out of, and is dependent upon, the nature of the husband's seizin, such inchoate right must necessarily be affected with any infirmities of such seizin, and be qualified by any paramount right, subject to which it has been acquired; and where, as in this case, the husband's seizin was qualified and subject to the paramount right of the other cotenants to demand partition, the plaintiff's inchoate right of dower, growing out of and dependent upon such seizin, was subject to the same qualification. When, therefore, the seizin of the husband was divested by the exercise of the paramount right of the other cotenants to demand partition, the inchoate right of dower was likewise destroyed so far at least as the land was concerned, and the plaintiff was no *Page 312 
more a necessary party for that purpose than is a judgment creditor of one of several tenants in common, in case of a sale of the common property for partition. * * * When, therefore, such seizin was divested by the sale for partition, the effect, so far as any subordinate right dependent upon such seizin was concerned, was the same as if the title and such seizin had remained in Alfred Holley. When the basis upon which the subordinate right of dower rested, was destroyed by the exercise of a right paramount to the inchoate right of dower, such right necessarily fell with it, and could not be asserted against one claiming under a right paramount to it. * * * Indeed, it would be anomalous tohold that the purchaser at a sale made under the exercise ofa paramount right, should take his title subject to one claimingunder a subordinate right."
In Gaffney v. Jefferies, 59 S.C. 565, 38 S.E., 216, 53 L.R.A., 918, 82 Am. St. Rep., 860, the Court said:
"The case of Holley v. Glover * * * is grounded upon the principle, that the inchoate right of dower is subject to the paramount right of the cotenants to partition."
In the case of Ex parte Union Mfg. Co., 81 S.C. 265,62 S.E., 259, 128 Am. St. Rep., 908, the company held a conveyance from two tenants in common, of an easement to overflow a portion of the land held in common with a third tenant. In an action for partition among the tenants in common, the company asked to intervene in order to force an allotment to the granting tenants of the portion covered by the easement. The Court allowed the intervention, and in the course of the opinion by Justice Jones, later Chief Justice, it was said:
"In the case of incumbrances, such as judgments or mortgages, against the interest of a cotenant, it may not be necessary, as a rule, to make such lienholders parties, because, after partition in kind, the lien will merely be transferred to the tenant's share in severalty, or, in case of sale, the tenant's *Page 313 
share in the fund, and thus complete justice be effected. * * *"
It is true that this declaration was not essential to the decision as such condition was not under review. Strictly, it may be considered obiter dictum; it, however, comports with my conception of the law and in addition has the imprimatur of one of the great Judges of this Court.
In Marion County Lumber Co. v. Lumber Co., 84 S.C. 505,66 S.E., 124, 877, the Court said:
"It is also a familiar principle that, in order for the process of the Court to convey lands free from incumbrances, the incumbrancers must be parties to the proceedings; otherwise the purchaser takes subject to the right of the incumbrances. * * * The action of partition is an exception to this rule. In case of judgments against the interest of cotenants it is not necessary, as a rule, to make such lienholders parties, because, after partition in kind is made, the judgment by operation of law attaches to the allotted share of the judgment debtor as of its original lien, or, in case of sale, is transferred to his share in the fund."
"A mortgage executed by a tenant in common upon his interest pending a suit for partition, is subordinate to the rights of the other cotenants and to the decree rendered in such suit." 1 Jones, Mtg. (6th Ed.), § 706; United Co. v.Dock Co., 42 N.J. Eq., 547, 9 A., 586; Austin v. Bean,101 Ala., 133, 16 So., 41.
In the case of Simmons v. Simmons, Harp. Eq., 256, land was sold under partition proceedings. The proceeds were distributed among the heirs at law as the decree directed. It appeared that previously to the institution of the partition proceedings, judgments had been entered up against one of the heirs at law. After the sale and actual distribution of the proceeds the judgment creditors ruled the Commissioner in Equity to pay the amount of the judgment debtor's allotment to them. The Commissioner made return that he had already paid to the debtor the amount of his allotment, *Page 314 
according to the decree and without notice of the judgments. The Court held, quoting syllabus:
"Land was sold by the Commissioner, for partition among parties against whom there were unsatisfied judgments. The Commissioner having paid the money to the parties, under the order of the Court, was held not liable, on a rule, to the judgment creditors."
The Court very clearly shows that if application had been made in season by the judgment creditors, an order would have been passed directing the Commissioner to apply the allotment ascertained to be due to the judgment debtor, to the judgments, legal liens.
In Ex parte Crawford, 27 S.C. 159, 3 S.E., 75, the Court said:
"We do not consider that the appeal involves the merits of the case as to whether the petitioners, judgment creditors of James H. Adams, are entitled to have their judgment paid out of the share, about to be ascertained, of their debtor, James H. Adams, in the estate of his father; but simply whether they have an equity to be heard in the main cause before the division of the estate and a final decree is made in relation to the said share. If the creditors of James H.Adams have the right to be heard upon the subject, it mustbe at this time, for it will be too late after the Court hasmade final disposition of his share. Simmons v. Simmons, Harp. Eq., 256." (Italics added.)
The Court adds:
"It is true that this lien, if not enforced before partition, would not have been allowed to interfere with the rights of the parties to partition and divide the same among themselves. But by timely application to the Court, the judgment or record creditors could have had their liens protected by an order for the payment to them of the defendant's share of the price of the lands divided or sold for division."
In Gatewood v. Toomer, 14 Rich. Eq., 144, the Court said: *Page 315 
"In proceedings for the partition of the real estate of a deceased person among his heirs or devisees, it is the practice of the Court, upon the suggestion of the personal representative, or of other persons interested as creditors, to take care that their rights are protected and an order made for calling in creditors. And so, if a claim exists to the distributive portion of one of the heirs or devisees, it is not infrequent to entertain a petition, in behalf of such claimant, entitled in the cause, and a copy of such petition is required to be served upon the adverse party."
In Rabb v. Aiken, 2 McCord Eq., 118, the Court said:
"Whether the complainants [judgment creditors], by a timely application could have arrested the money in the hands of the defendants before it was paid over, may perhaps be a question worthy of consideration. But he has[they have?] no claim upon the land."
In Stern v. Epstin, 14 Rich. Eq., 5, the Court said:
"A prior judgment, without sale thereunder, might not in this case, perhaps, any more than in cases of the partition of intestate's estates, affect the title of a purchaser, at the sale for partition" — citing Keckeley v. Moore, 2 Strob. Eq., 21, and Burris v. Gooch, 5 Rich., 1.
In Pendergrass v. Pendergrass, 26 S.C. 19, 1 S.E., 45, the Court recognizes the right of a judgment creditor after a sale for partition to intervene before the proceeds are distributed for the protection of his lien. In Stern v. Epstin, 14 Rich. Eq., 5, the Court quotes with approval the following from Winchester v. Paine, 11 Ves., 197:
"Ordinarily, it is true, that the decree of the Court binds only the parties to the suit. But he who purchases during the pending of the suit, is bound by the decree that may be made against the person from whom he derived his title. The litigating parties are exempted from the necessity of taking any notice of a title so acquired. As to them, it is as if no such title existed. Otherwise, suits would be indeterminable, or which would be the same in effect, it would *Page 316 
be in the pleasure of one party at what period the suit should be determined."
And adds:
"A purchaser pending proceedings in partition is like one who enters, pending an action of trespass to try titles; as the latter would be turned out by the writ of habere faciaspossessionem, after judgment for the plaintiff, so the former is subject to the decree, as if he had been an original party in the proceedings."
In the case at bar, Livingston's mortgage was executedafter the partition proceeding had been commenced; he was bound therefore by the resulting decree, notwithstanding the fact that he had not been made a party. The decree directed a sale and a most specific and detailed scheme of distribution, which was carried out to the letter. It has been suggested that the bank had notice of the Livingston mortgage before the sale for partition and that Mrs. Swygert cannot be considered therefore a purchaser for value. I do not think that this fact cuts any figure in the case, for if so, the bank had the right to assume that, as the law provides, the partition would transfer the lien of that mortgage to the allotment, either in land or cash, which might be made to Bradford Keel.
It is suggested that as notice of lis pendens was not filed in the partition proceeding, Livingston was not bound by the decree. It is specifically provided in the Code, § 388, that the filing of the notice shall be constructive notice of the pendency of the suit; it does not purport to avoid effect of actual
notice, any more than the recording act avoids the effect of actual notice of an instrument required for purposes of notice to be recorded. In this case, as has been shown, Livingston had actual notice of the partition proceedings; he was present at the sale; prepared to buy the property and gave notice of his mortgage. Johnson who claims as assignee of Livingston was also present; and if he had not been, he would be bound by what bound his assignor. *Page 317 
In 1 Jones, Mtg. (6th Ed.), § 585, it is said:
"On the other hand, one who purchases with actual notice of the pendency of a suit affecting the land, cannot object that the statutory notice of the pendency of the suit was not filed."
A very nice question in the case arises in connection with these considerations. When Bradford Keel and the other two purchasers at $30,000 were ready to comply with their bid, each was entitled to $4,318.03 of the proceeds of sale; this amounted to $12,954.09, leaving the difference, $17,045.91, to be raised by them. They raised $15,000, less the discount, I assume, from the bank, and $2,000 and odd dollars from some other source. It would have been a needless form to have raised the $12,954.09 and had the executor to immediately refund to them their shares, $4,318.03 each; hence it may be assumed that the executor accepted their receipts for these shares and used them as credits. In legal effect it is the same as if the actual cash had been paid in and then paid out. The result is that the whole of the share of Bradford Keel was invested by him in his one-third interest in the land.
There is no question, under the authorities cited above, but that the lien of the Livingston mortgage was extinguished so far as the land was concerned, and was transferred to the $4,318.03, representing the share of Bradford Keel. He should have recognized the existence of this lien and should have paid the mortgage. This would have reduced the credit which he actually availed himself of, by the amount due upon the mortgage, and would have required him to raise that much more cash. He did not do this, but used the entire share as a credit upon his obligation for the purchase price. The question is whether the fact that Bradford Keel in acquiring a one-third interest in the land used a fund upon which Livingston's mortgage was a lien by transference, created a resulting trust in favor of Livingston to the extent of the amount due upon his mortgage. *Page 318 
I do not think that it is a matter of any consequence that with the fund Bradford Keel acquired an interest in this particular property; the same question of resulting trust would arise if he had invested his share of the estate in an entirely different piece of property.
There is no doubt as to the correctness of the principle announced in Kirton v. Howard, 137 S.C. 11,134 S.E., 859:
"Where trust funds are used in the purchase of property and title is taken in name of the fiduciary, or in the name of a third person, or the vendor fails to make title, a resulting trust immediately arises in that property in favor of the person or persons entitled to the funds with which the property is purchased."
While this is true, the question is insistent: Does the fact that the holder of the Livingston mortgage had a lien upon the $4,318.03 interest of Bradford Keel in the proceeds of the partition sale, constitute a resulting trust, so that the holder of the mortgage could follow it into the one-third interest in the land of Bradford Keel? In other words, was that fund in the hands of Bradford Keel a trust fund? I think that there can be no doubt but that Bradford Keel invested that fund in the land, and the disputable question is, were they trust funds?
In 1 Perry, Trusts (3d Ed.), at page 144, it is said:
"But if one who stands in no fiduciary relation to another appropriates the other's money, and invests it in real estate or other property, no trust results to the owner of the money" — citing Hawthorne v. Brown, 3 Sneed (Tenn.), 462; Ensley v. Balentine, 4 Humph. (Tenn.), 233.
I do not think that the circumstances of this case bring it within the rule announced in Kirton v. Howard. The money belonged to Bradford Keel, not to Livingston the mortgagee. The fact that Livingston was entitle to a lien upon it is conclusive that it belonged to Bradford Keel and not to Livingston; for the latter could have no lien upon what *Page 319 
belonged to him. While the right of a mortgage of a single tenant in common's interest after partition is spoken of as a lien transferred to the allotment, it is really an equitable right which he has the right to apply to the Court to enforce provided he does so seasonably.
As the Court says in Ex parte Crawford, 27 S.C. 159,3 S.E., 75:
"If the creditors * * * have the right to be heard upon the subject, it must be at this time, for it will be toolate after the Court has made final disposition of his share."
There was no fiduciary relation between Bradford Keel and Livingston; they were at arms' length; Livingston had the right after the sale to come in and have his mortgage paid out of Bradford Keel's interest, an adversary proceeding; Bradford Keel had the right under the order of Court to receive his share unless Livingston intervened; and when he received it and spent it, Livingston's right was ended, except to make Bradford Keel account therefor, which did not involve the imposition of a lien upon the land. "There must be an actual payment from a man's own money, or what is equivalent to payment from his own money, to create a resulting trust." 1 Perry, Trusts (3d Ed.). 149. "A trust fund does not arise merely from the relation of debtor and creditor; but the person seeking to establish a resulting trust must be able to identify the specific fund, or their investment, and the specific property in which they have been invested." Moore v. Taylor, 251 Ill., 468,96 N.E., 229.
Mr. Perry, in his work on Trusts, divides them into four classes: (1) Express trusts: (2) implied trusts: (3) resulting trusts, and (4) constructive trusts. We may pass over the first and second, as there is no evidence of either. The fourth is based upon fraud or misrepresentation; it may be passed over for the same reason. Certainly Bradford Keel cannot be said to have been guilty of fraud or *Page 320 
misrepresentation when he did what the order of Court permitted him to do, accept his share.
So that if it be any kind of a trust it must be one of the third class — a resulting trust. It cannot be this for two reasons: (1) A resulting trust springs out of a fiduciary relation between the parties. The relation here between Bradford Keel and Livingston was that of debtor and creditor, an adversary relation. (2) The money belonged to Bradford Keel and not to Livingston, although subject to a lien in favor of Livingston, which he might have enforced but did not, before it was actually paid into the hands of Bradford Keel.
"But the doctrine is strictly limited to cases where the purchase has been made in the name of one person and the purchase-money has been paid by another." 3 Story Eq. (14th Ed.), § 1598.
"The rule is that in order to establish a resulting trust of this class, it is necessary that the person paying the purchase money should have actually paid it as his own." 26 R.C.L., 1220.
"After a judgment in partition has been entered directing a distribution of the proceeds, the Court cannot make an order directing the distributees to pay back the money to the referee, and directing the referee to retain the money, and take proof of claims, and make payment thereon." Fannonv. McNally, 33 App. Div., 609, 53 N.Y.S., 1032.
"It is indispensable to the existence of a resulting trust in land on the ground that the money of the complainant has been used without his consent to acquire the title to the land in another that the complainant should have been the owner of the money when it was used." Martin v. NewYork S.L. Min. Mfg. Co. (C.C.A.), 165 F., 398.
The question cannot be determined by the relative priority of the Livingston mortgage over that of the bank, for the reason that Livingston's mortgage was extinguished by the partition sale, and what was left to him was a transferred *Page 321 
lien upon the allotment of Bradford Keel, an equity to have that applied to his mortgage debt.
Even if the application of the interest of Bradford Keel to the purchase price of the land constituted a resulting trust, the transaction would fall under the rule announced inCohen v. Goldberg, 144 S.C. 70, 142 S.E., 36:
"For a trustee to apply money then impressed with a trust in part payment for land, and to give mortgage for balance due, would be a breach of trust. * * * Not so, however, when the trust is created by the deed executed contemporaneously with the mortgage."
A mortgage of the interest of a tenant in common, under a mortgage executed during the pendency of an action for partition, is bound by the decree made against the party from or through whom he claims. I do not think that it is essential to the case at all, but it seems clear from the authorities that the will does not confer upon Bradford Keel a vested interest in the land; his interest does not become vested until the division provided for shall have been made.
In Kales, Estates (2d Ed.), § 500, it is said that, where the only gift is to be found in the direction to pay or divide at a future time, the "context justifies the prima facie inference that the legacy is contingent upon the legatee surviving the date of payment. It has been applied where the time of distribution is sure to arrive and is unconnected with the legatee, such as the expiration of a given number of years."
"In the case of a gift to a person in trust for another, if there are specific and effectual directions that the trust shall continue for a specified time and that the trust res
of principal shall not be turned over to the beneficiary or beneficiaries until a certain time named, the cestui que trust cannot be considered as having a vested interest therein until the arrival of the time named; and consequently it would seem, if the time named is more remote than the period *Page 322 
allowed by the rule, the gift would be void." 1 Tiff. R.P. (1st Ed.), 355.
"Where there is no gift but in a direction to pay or transfer or divide among several persons at a future period, though the future period is annexed to the payments, possession or enjoyment, yet it is also annexed to the devise or bequest itself. For in this case the direction to pay or transfer or divide constitutes the devise or bequest itself; andtherefore the vesting in interest is postponed and not merelythe vesting in possession or enjoyment." Smith, Executory Interest, § 314.
"The first question that arises is, when the children were, by the terms of the will, to take the shares allotted in slaves by name? The language of the will bearing on the answer to this question is `on the division and partition of the same' (meaning the residue of the estate, real and personal, after the specific devise to James R.). `I allow the negroes to be laid off, allotted and vested as follows.' Then follows the specific allotment of the negroes as already stated. It is clear that this provision is to take effect upon the partition of the estate, and that in the meantime the slaves are to remain part of the testatrix's undivided estate." Jones v.Massey, 9 S.C. 376.
A testator directed that his negroes should be hired out by his executors for five years, "and at the expiration of 5 years * * * that my executors divide said negroes * * * equally among all my children, and in case any of my children" should die before said time "leaving lawful children, said * * * children, shall take the shares of their parents." Held that this was a bequest to a class answering a certain description at the end of five years and no interest vested until that time. Fulkerson v. Bullard, 3 Sneed (35 Tenn.), 260.
"As a general rule, where there are no words importing a gift other than a direction to the executors or trustees to divide or pay at a future time, the legacy is contingent and *Page 323 
does not vest until that time arrives." 30 A. E. Enc. L., 771.
"Where a gift in a will is implied from the direction to divide or pay at a future time, it necessarily is inseparable from that direction, and must partake of its quality, and, one being contingent, the other must be; the conditional element being incorporated into the description of or into the gift to the remainderman." Lingo v. Smith, 174 Iowa, 461,156 N.W., 402.
"The general rule for determining whether a bequest is vested or contingent is that when the time of division is of the substance of the gift the legacy is contingent, but when the time is mentioned only as a qualifying clause of payment or division the legacy is vested." Crawford v. Engram,153 Ala., 420, 45 So., 584.
"Where there is no gift but by direction to executors or trustees to pay or divide the subject of the gift at a future time, the vesting is postponed until that time arrives." Wessborgv. Merrill, 195 Mich., 556, 162 N.W., 102, L.R.A., 1918-E, 1074.
"Where there is no gift, but a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting will not take place until that time arrives." Palmsv. Palms, 68 Mich., 355, 36 N.W., 419.
In Taveau v. Ball, 1 McCord, Eq., 8, it was held:
"Where the time of the division is not connected with the substance of the gift, the vesting is not postponed to the period for division."
In Bryson v. Nickols, 2 Hill Eq., 113, the bequest was of a slave for life; at the death of the life tenant the slave was directed to be sold and the proceeds divided among the testator's five oldest children. The question arose whether the remaindermen took a vested interest in the slave. The Court, citing Taveau v. Ball, said:
"`If the time of division be not the substance of the gift, it is only matter of regulation.' That applies to cases where *Page 324 
there has been a gift to several, and a future time appointed for division — then, if the time of division be not the substance of the gift, it only operates to regulate the division to be made. But in this case, the rights of the elder children are not to the thing itself, but that the proceeds of the slave, when sold, should be divided among them. The division is hence of the substance of the gift; and they can take no interest, until by law, or rather by the will, that division is to be made."
"Where there are no words of direct and immediate gift, but simply a direction that the trustees shall convey at a future time on a certain contingency, futurity is annexed to the substance of the gift, and survivorship at the time of distribution is an essential condition to the acquisition of the interest of the subject-matter. * * * Besides, the general rule is that where the devisees compose a class and there are no words of devise, except a simple direction to divide the property at a specified time, the gift will not vest until the time of division." Lemmon v. McElroy, 113 S.C. 532,101 S.E., 852.
In McGregor v. Toomer, 2 Strob. Eq., 51, the Court said:
"The general rule which has been drawn from the host of cases of this kind, with which the books abound, is that if futurity be annexed to the substance of the gift, the vesting is suspended, but if it appears to relate to the time of payment only, the legacy vests instantly. * * * When the testator has any ulterior object in deferring the vesting of the legacy to the time appointed for the legatee to take possession, then there would be some ground to consider it contingent."
See, also, Wessborg v. Merrill, 195 Mich., 556,162 N.W., 102, L.R.A., 1918-E, 1074; Quinlan v. Wickman,233 Ill., 39, 84 N.E., 38, 17 L.R.A. (N.S.), 216; McCombv. Morford, 283 Ill., 584, 119 N.E., 601. *Page 325